(No. 33334.—)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* PAUL CRUMP, Plaintiff in Error.

*Opinion filed March 24, 1955.*

EDMUND H. GRANT, of Chicago, for plaintiff in error.

LATHAM CASTLE, Attorney General, of Springfield, and JOHN GUTKNECHT, State's Attorney, of Chicago, (JOHN T. GALLAGHER, RUDOLPH L. JANEGA, IRWIN D. BLOCH, and JOSEPH V. McGOVERN, of counsel,) for the People.

Mr. CHIEF JUSTICE BRISTOW delivered the opinion of the court:

The plaintiff in error, Paul Crump, hereinafter referred to as defendant, has brought a writ of error to review and reverse his conviction of murder and his sentence to death in the criminal court of Cook County.

The defendant, together with David Taylor, Eugene Taylor, Harold Riggins and Hudson Tillman, was jointly

indicted for the crime of murder of one Zukowski, chief of plant guards at Libby, McNeill & Libby in the Chicago Stockyards, during a robbery which occurred on March 20, 1953.

Tillman, whose name appeared on the list of witnesses filed by the State, was granted a severance by the court and the rest of the defendants submitted their cause to a jury. The jury returned verdicts finding Crump, the two Taylors and Riggins guilty and setting the punishment of Crump at death and that of each of the other three at 199 years in the penitentiary.

On the same day as the payroll robbery and alleged murder, the defendant Crump, together with certain other defendants, was picked up by the Chicago police, taken to the Stockyards Police Station, and questioned concerning the robbery and murder. After extensive questioning, Crump and the defendants picked up with him were released on March 23. On the night of March 25 Hudson Tillman surrendered himself to police authorities through his attorney, and, as a result of his complete confession, the defendant Crump, with the other defendants, was rearrested on March 26. On March 27 statements were allegedly made and signed by the two Taylors, Riggins and the defendant, Paul Crump, in the office of the State's Attorney.

On March 31, 1953, the defendant was jointly indicted with the other four for the murder, and the defendant, with the others, was arraigned and pleaded "not guilty." On April 13 the defendant, through his counsel, presented a motion to be examined by a competent physician and surgeon and to be permitted to have a photographer and the court reporter present at the time of the examination, which motion was denied by the court after a hearing.

On May 5, the defendant Crump presented a motion for change of venue, for a list of the names of jurors and witnesses, for a bill of particulars, and also for a continuance from May 11, the date for which trial had been set,

to a later date in order to permit adequate preparation for trial. The motion for change of venue and for a list of the names of jurors and witnesses was allowed. The bill of particulars was denied, and the trial date was set for May 18.

The selection of the jury was begun on May 18, 1953, and, after numerous panels were exhausted, a jury was finally selected and sworn on June 4 and the cause proceeded to hearing through June 19, on which date a verdict of "guilty" was returned. Thereafter motions for new trial and in arrest of judgment were denied and sentence pronounced.

Without attempting to recite the testimony received in evidence in detail, suffice it to say that numerous witnesses testified as to facts surrounding the alleged robbery and murder, including Hudson Tillman, one of the codefendants in the indictment, and the alleged statements by each of the defendants were admitted in evidence after a limited preliminary hearing on their admissibility. Crump and each of the other defendants testified in his own behalf along with other defense witnesses attempting to establish alibis.

The defendant Crump is the only party to have brought writ of error to review the verdict and sentence, and assigns fourteen errors as a basis for reversal. Those fourteen errors were argued in detail in the written brief. Argument of Crump and the errors complained of may be summarized as follows: The admission of improper evidence on behalf of the State; the refusal to admit proper evidence on behalf of defendants; the admission of certain exhibits on behalf of the State; the failure to prove the defendant guilty beyond all reasonable doubt; the refusal to give certain instructions asked by the defendants; the limitation of examination of State's witnesses by the defense; the refusal to grant defendant additional time in which to prepare his case adequately; failure to have a complete preliminary hearing as to admissibility of alleged

statements; questioning by the court of jurors as to their qualifications respecting the death penalty; conversations by the court with four sworn jurors when counsel was not present; denial of the motion for physical examination of defendant with photographer and shorthand reporter present; calling a court's witness on preliminary hearing without request from either side, and permitting the State, on the trial, to refer to his testimony as a court's witness without such witness testifying before the jury; improper and prejudicial arguments and conduct of an assistant State's Attorney; and the verdict being the result of passion and prejudice and contrary to the law and evidence.

The record before us is voluminous, the defendant was aggressively represented, and the trial was a bitter one. No trial judge can be expected to sit as an arbiter in such a contest without the intervention of error. Too many rulings must be promptly made in the hurried process of trial for there to be a perfect record. Were the mistakes made of such a character that they constituted reversible error?

Defendant's involvement in the occurrence at Libby, McNeill & Libby plant on March 20, 1953, was clearly established by the testimony of Hudson Tillman, an accomplice. His testimony was therefore of great importance. It is claimed on this review that defendant's counsel in the cross-examination of Tillman was unduly restricted. It is universally recognized that the testimony of an accomplice is fraught with weaknesses, due to the effect of motives, hope of leniency or benefits, or the effect of fear, threats, hostility, etc. Defendant's counsel in his oral argument before the court emphasized this as a basis for reversal. The trial court sustained objections to questions propounded on cross-examination of Tillman as to whether he was a narcotic addict or user of narcotics.

The specific questions asked were "Are you a narcotic addict? Do you take the stuff?" "Did you ever take

heroin?" and "Didn't you, on March 20th, buy some narcotics and pay $17.00 for it?"

The defendant Riggins testified that after he met Tillman on March 20, 1953, he drove with Tillman to Kankakee; that Tillman wanted to stop at Robbins; that Tillman entered a house and stayed five to fifteen minutes at the most; that Tillman came out, entered the car and Riggins noticed he was pale and was talking foolishly, and he could not understand him even though he tried to make sense of Tillman's conversation; that he looked at him later and Tillman's eyes were rolling around in his head; that Riggins got some ice and Tillman was "slobbering and whatnot over himself;" that he drove to Elsie Cameran's house on 130th near Michigan; that Riggins was afraid Tillman was passing out on him; that Elsie denied him admission to her home; and that he packed ice around Tillman's head, under his arms and over his chest, and then drove to Kankakee.

Tillman was in custody of the State's Attorney's office in the witness quarters and readily available to testify in rebuttal, but none of the above was contradicted by him.

The witness Tillman was a codefendant, who had been jointly indicted with the others, and upon his being listed as a State's witness his trial was severed from that of the other four. His testimony on behalf of the State implicated the defendant Crump and others in the alleged crime. If his testimony was fully believed by the jury, it would have had a substantial bearing on the jury's findings and conclusions, both as to guilt and recommendations as to penalty.

The error assigned presents a clear-cut question of first impression in this State as to whether or not an accomplice witness can be properly cross-examined as to the witness's drug addiction for the purpose of impeaching the witness's credibility. In support of the contention that such cross-examination is proper, the defendant has cited three Illinois cases, *People v. Bond,* 281 Ill. 490; *People v. White,* 251

Ill. 67, and *People* v. *Winchester,* 352 Ill. 237. In the *Bond case* the court held it was proper for the State to cross-examine a defense witness as to whether or not she was the keeper of a house of ill fame, saying: "If a witness is engaged in an unlawful and disreputable occupation, in justice and fairness he should not be permitted to appear before the jury as a person of high character who is engaged in a lawful and reputable occupation." In the *White case* it was held proper for the State to cross-examine a defense witness to bring out the fact that he operated a gambling house, saying: "The law does not permit proof of other offenses not connected with the charge upon which the defendant is being tried, [citing cases,] but the prosecution could not be hampered nor restrained in perfectly legitimate cross-examination because an inference unfavorable to defendant might arise. Surely the prosecution was not required to permit this witness to appear before the jury as a man of high character and worthy of confidence when he was disreputable and his chief occupation that of a law-breaker." In the *Winchester case* this court reversed a conviction of the defendant, in which he was sentenced to death, for the refusal of the trial court to let the State's argument be taken down and for unduly limiting the cross-examination of a witness to show that such witness's house was a house of prostitution, stating at page 244: "It was proper for the defendant to bring out this fact on cross-examination as a matter affecting the credibility of the witness. (*People* v. *Bond,* 281 Ill. 490.) The court erred in unduly restricting the cross-examination of witness Cox." And at page 247 the court used this language which is of value in resolving the problem before us. "The denial of this right, together with the error in unduly limiting the cross-examination of the State's witness Cox, must, in view of the circumstances under which improper and incompetent evidence prejudicial to the defendant was put before the jury, be held to be

grounds of reversal in this case. Since the jury in this case had a wide discretion in fixing the punishment and did by its verdict fix the maximum punishment, death by electrocution, it is not a case where this court could affirm the judgment notwithstanding prejudicial error, even if it could say that the proof of guilt was clear. [Citation.] This court has many times ruled that in the trial of a murder case, in which the punishment may be by confinement of the defendant in the penitentiary for fourteen years only or for the term of his natural life, or in which the death penalty may be fixed, evidence must in those cases be admissible which would not have been admissible, or if admissible could have availed nothing at common law. For these reasons evidence must be admitted if it tends to prove a substantial ground to lessen the punishment and to reduce it below the maximum punishment fixed for murder. On the other hand, for similar reasons, this court has refused to sustain the maximum punishment in cases in which prejudicial error against a defendant had been committed although the evidence showed that the highest crime known to the law—the murder of a human being in the peace of the people—had been committed."

Courts in other jurisdictions have reached conflicting conclusions as to this general question. In *State* v. *Prentice,* 192 Iowa, 207, 183 N.W. 411, 15 A.L.R. 904, the defendant appealed from a judgment convicting him of larceny of an automobile, in which appeal one of the assignments of error was the admission of evidence as to the use of drugs by one of the defendant's witnesses. The defendant's witness in question had been evasive in answering questions on cross-examination as to her use of narcotics and had denied the use of the drug and that she had purchased any of doctors. A doctor was permitted to testify on behalf of the State, over objection, that the witness had obtained narcotics from him. The defendant did not claim that the cross-examination of the witness as to

the use of narcotics for the purpose of impeaching credibility was improper, but contended that the State was bound by her answers and might not impeach her thereon. The Iowa court, after considering various cases apparently touching upon this particular question, held that the evidence was admissible and proper to be considered by the jury for what it was worth, largely relying for its conclusion upon the fact that insincerity of a witness may be shown. That case, however, does not pass upon the precise question here presented to the court.

In the annotation following the report of the *Prentice case* in 15 A.L.R., beginning at page 912, under the subject of "Use of drugs as affecting competency or credibility of witness," it is stated editorially that the rule followed by the majority of cases appears to be that for the purpose of discrediting a witness evidence is inadmissible to show that he is a user of opium, morphine or similar drugs or to show the effects of the use of such drugs unless it is proved that the witness was under their influence at the time of the occurrences as to which he testified, or at the time of the trial, or that his mind or memory or powers of observation were affected by the habit.

The substance of these holdings as indicated in *State* v. *King*, 88 Minn. 175, 92 N.W. 965, and *Katleman* v. *State*, 104 Neb. 62, 175 N.W. 671, seems to be that whether the witness is a narcotic addict or not is a collateral issue which the court will decline to try; that since the witness is before the court his mental condition is obvious to both court and jury, and it is for them to say whether he is in a condition of mind to understand and appreciate his testimony, whether he is fabricating or whether his testimony is straightforward and unequivocally given; and that the witness's appearance, demeanor and manner of testifying are sufficient to inform the jury of his mental condition and of his credibility. Although such may be the proper rule as to admissibility of expert testimony to

prove the nature of drug addiction and its effects, the present question is as to the propriety of cross-examination of an accomplice to show the mere fact of drug addiction as affecting his credibility.

There are decisions from other jurisdictions, as noted in the above referred to annotation in American Law Reports, that it is proper to show, by cross-examination of the witness himself, that the witness is a habitual user of narcotics, and to establish by competent evidence the effect of such use upon mental faculties of the witness. *Beland v. State,* 86 Tex. Cr. 285, 217 S.W. 147; *State v. Fong Loon,* 29 Idaho, 248, 158 Pac. 233; *Anderson v. State,* 65 Tex. Cr. 365, 144 S.W. 281; *People v. Webster,* 139 N.Y. 73, 34 N.E. 730; *State v. Concannon,* 25 Wash. 327, 65 Pac. 534; *Wilson v. United States,* 232 U.S. 563, 58 L. ed. 728.

The general rule in Illinois, as established by the *Bond, White* and *Winchester* cases referred to above, is that it is proper to cross-examine a witness to bring out the witness's unlawful and disreputable occupation and activitiy as a matter affecting credibility.

The admissibility of such evidence seems to be recognized in 3 Wigmore, Evidence, 3d ed. 1940, sec. 934, where the author states: "Any diseased impairment of the testimonial powers arising from whatever source ought also to be considered." Although stating that the drug habit, in that it may have such an effect, should accordingly be considered, the author does recognize that all courts have not yet gone so far. Among the cases cited by the author supporting his general conclusion is *Chicago & Northwestern Railway Co. v. McKenna,* 74 Fed. 2d 155. Although this was a civil action for damages, the trial court had withdrawn from consideration of the jury evidence of drug addiction brought out on cross-examination and instructed the jury to disregard it. In reversing, the

Circuit Court of Appeals stated: "We think this action of the Court was error and that the defendant should have been permitted to show on cross-examination or otherwise that he [appellee] was a habitual user of drugs and to develop by competent evidence the effect the continued addiction might have upon one's mental faculties irrespective of whether he was under immediate influence of drugs at the time of the occurrence. (*People* v. *Webster,* 139 N.Y. 73, 34 N.E. 730.) We think it had a direct bearing upon his credibility and also upon the question of who may have been the aggressor in the quarrel occurring in the railroad yard."

On oral argument of this case, counsel for the People admit that the proffered questions on cross-examination as to drug addiction of the accomplice witness were proper, but they attempt to avoid such confessed error on the theory that the jury was properly instructed by the court as to the weight to be given testimony of an accomplice; that the defense had an opportunity to supply witnesses to prove drug addiction of the accomplice witness; and that the evidence in the case, without that of the accomplice witness, conclusively established guilt, and such testimony was unnecessary.

In *State* v. *Fong Loon,* 29 Idaho, 248, 158 Pac. 233, it is stated "Habitual users of opium or other like narcotics become notorious liars. The chronic morphinomaniac is often a confirmed liar—the truth is not in him. The capacity of a witness to observe and to receive accurate impressions, to retain them in his memory, and to correctly relate them, also his power and inclination to be truthful, are all subjects which go to the credibility of a witness."

In our opinion, the jury was entitled to know whether Tillman, the accomplice witness, was or had been a drug addict or had used narcotics on the day of the alleged crime, it being a very important factor going to the gen-

eral reliability of his testimony. The refusal of the court in this case to permit cross-examination along such lines was prejudicial and reversible error.

Defendant further sought to show on cross-examination that Tillman entertained a feeling of hostility toward the Crump family because defendant's brother had wronged Tillman's sister. The testimony of an accomplice should be scrutinized carefully. It was an area of proper inquiry for the defendant to determine if there was ill will engendered in Tillman because his sister had become an unwed mother as a result of defendant's brother's illicit relation with her.

It is also urged that the court erred in denying the defendant Crump's motion for continuance. On May 5, 1953, defendant's counsel filed motion for continuance supported by affidavit showing that counsel was engaged in the trial of a civil jury case continuously from April 7, 1953, to and including April 30, and that on that date the wife of defendant's counsel had entered the hospital, where she remained until May 3, and asserting that counsel had been unable to prepare for trial from April 24 to the date of the filing of the petition. No counteraffidavits were filed by the State. On May 6, the day such motion was argued, the State furnished the defendant with a list of 48 witnesses, about which the court was advised by counsel for defendant, and that it would be necessary for him to investigate each of such witnesses. From the record it appears that counsel had represented defendant since March 27. The indictment was returned March 31, and on April 13 the case was set for trial for May 11, and at the time of the hearing on the motion the court ordered the case set for trial May 18, a little over ten days from the date of hearing of the motion. The record is silent as to any urgent reason for the State or the court to proceed to trial, and the State was avowedly seeking the death penalty. A motion to continue a cause, as here presented,

is addressed to the discretion of the court. (*Benton* v. *Marr*, 364 Ill. 628.) However, on a charge of murder, where the prosecution is seeking the death penalty, every reasonable opportunity should be given the defendant to investigate witnesses against him and to prepare his defense.

It is our opinion the court abused its discretion in denying the defendant adequate time to prepare his defense in this case. Ten or eleven days to investigate 48 State witnesses and to prepare for cross-examination thereof and to prepare the defense in chief in a capital case can hardly be deemed reasonable and the trial court should have continued the case to a later date.

Defendant further assigns as error the denial of defendant's motion for permission to have a physical examination in the county jail, with a shorthand reporter and a photographer present. Such motion was made on April 13, 1953. No reason is shown in the record for the court's denial of such motion. It should be noted, however, that the defendant's contentions of brutality in obtaining alleged statements is directed to the date of March 27 and times prior thereto. The record shows that on March 28 all defendants were stripped and examined by a doctor and no complaints of any kind were made to him. Considering the time lapse between the acts of alleged brutality and the request for examination by the defendant, and the fact that a physical examination was actually made by a doctor immediately after the alleged signing of the alleged statements, we cannot say that the trial court abused its discretion in denying such motion, or that the defendant was in any way prejudiced.

The written brief and argument of defendant also assigns as error that it was improper for the trial court to have lengthy conversations with four jurors, who had been accepted and sworn to try the issues, out of the presence of counsel for either side, and not to bring the matter discussed to the attention of counsel for the defendant.

The State's brief points out that the record of proceedings discloses that the court advised counsel in chambers that the four jurors had talked to him, that the conversations had been transcribed by a court reporter, and that the record of such conversations was read to counsel. Counsel for defendant on oral argument concedes that state of facts to be true and that his contention was the result of an oversight in studying the record. The record does not show any objection or exception to such occurrence by counsel for defendant or motion for mistrial, and nothing appears from such incident to have prejudiced the defendant of which the defendant can complain.

It also appears that the trial court, during the selection of the jury, questioned each of the several special venires collectively as to whether or not they had any conscientious or religious scruples against the infliction of the death penalty. In the course of such collective questioning of each special venire the court excused for cause those that admitted matters which disqualified them from service on this particular jury. Error is assigned as to this procedure but such objection is not well taken. There was no questioning at great length and no repeated questioning of the same venire. The inquiry as to whether any of the jurors had moral or religious scruples against the inflicting of the death penalty in a proper case and the excusing of those who had was within the court's province. Frequently this practice is adopted by courts as a time saving measure.

Objection is also made to the fact that the trial court permitted the first-assistant State's Attorney to testify in rebuttal although such witnesses had been present during the trial and an order excluding witnesses had been made. The record shows that Mr. Austin, the first-assistant State's Attorney who had been instrumental in the taking of defendant's alleged statements and confessions, appeared on the list of witnesses furnished the defendant by the State and that the court ordered all witnesses in the case to be ex-

cluded, even at the time of the picking of the jury. Austin participated in the trial and at the time of exclusion had agreed that all witnesses be excluded. At the time the accomplice Tillman was called as a witness, defendant's counsel asked the court to exclude Austin from the court-room. After the jury was excused Austin advised the court that he had been informed that he would not be called as a witness regardless of the fact that his name was on the witness list, and another assistant State's Attor-ney conducting the case confirmed such statement. The court then said that it would take the assurance of Austin, and the State agreed to cross Austin's name off the list, and he was permitted to remain in the court room. Further objections by defendant's counsel to Austin's presence were overruled.

Austin had taken a leading part in the interrogation of the defendants at the time of their arrest and at the time their alleged confessions were made. He also took an active part in the trial of the case and upon being called as a rebuttal witness testified, over objection, that he took statements from certain of the various defendants, iden-tified each of said alleged statements, and testified as to what happened at the time of taking them and conversa-tions that occurred at such times. Although part of his testimony rebutted testimony given by the defendants on the stand, a large portion of his testimony properly be-longed to the State's case in chief. A trial court is vested with discretion in permitting a witness to testify, even if an order excluding witnesses has been entered. (*People* v. *Godsey,* 334 Ill. 11; *People* v. *Sink,* 374 Ill. 480; *People* v. *O'Malley,* 404 Ill. 165; *People* v. *Thomaszcwski,* 406 Ill. 346.) The fact that a part of the testimony of a wit-ness might also have been competent in chief does not necessarily render it improper for reception in rebuttal. (*People* v. *Drysch,* 311 Ill. 342; *People* v. *Leach,* 398 Ill. 515.) However, as held in *People* v. *Castree,* 311 Ill.

392, the prosecution ought not, with knowledge of important testimony at its command, close its case without introducing it and then, after the defendant has introduced his testimony, be permitted to open up its case anew and introduce evidence in chief which it could have produced at the proper time but withheld. A prosecuting attorney owes a duty to conduct his examination of a witness fairly, regardless of whether objection is continuously made or not. (*People* v. *Botulinski*, 383 Ill. 608.) Here the prosecution knew, or should have known, of the importance and materiality of Austin's testimony in their case in chief, and in view of assurances made by the prosecuting attorney and Austin himself, a serious question exists as to the propriety of the court permitting Austin to testify in violation of the rule excluding witnesses unless his testimony was limited by the prosecuting attorney strictly to rebuttal testimony. Although such trial court action in and of itself alone would not prejudice the defendant, yet, since other errors warrant a reversal and remandment, such a situation should not be permitted to recur on a new trial.

On the preliminary hearing as to the admissibility of alleged confessions, during an examination of the defendant Crump, the court inquired about a Dr. Rosen's name and address and directed the clerk to subpoena such doctor for the following day as a court's witness. No request therefor had been made by either the prosecution or the defense, and no representations were made by either that they would or would not vouch for such witness. The following day the doctor appeared in response to such subpoena and as a court's witness testified that he made the examination of the defendant Crump on March 25; that from such examination the defendant was found to have a cold; that there were no marks or bruises of any kind; that the defendant had a temperature at that time of 103.6; that the defendant was fluoroscoped; that no pathology was indicated and that all the doctor was

interested in was his lungs and he was not interested in pathology. Dr. Rosen was not called as a witness by either side to testify before the jury, but during the cross-examination of defendant Crump the latter was asked, over objections, if he had heard Dr. Rosen testify outside the presence of the jury; that if he heard Dr. Rosen testify that Crump only had a cold; and if he knew that Dr. Rosen was called as a court's witness after Crump had testified about a severe beating he had received. In the closing argument to the jury, the State referred to this testimony. The defendant assigns as error both the calling of Dr. Rosen as a court's witness on the preliminary hearing and the prejudice from the State's reference, on cross-examination and in the argument to the jury, to Dr. Rosen as a court's witness and to the testimony he had given outside the presence of the jury. The tendency of Dr. Rosen's testimony at the preliminary hearing, and as referred to before the jury, was to rebut the defendant Crump's alibi of an incapacitating illness of pneumonia on the date of the alleged crime and his claim of brutality while in custody of the police. It is a general rule that a witness should not be called by the court as a court's witness unless it is shown that otherwise there may be a miscarriage of justice or the requesting party, for a reason about which he informs the court, doubts the integrity or veracity of the witness. *Carle* v. *People,* 200 Ill. 494; *People* v. *Cleminson,* 250 Ill. 135; *People* v. *Cardinelli,* 297 Ill. 116; *People* v. *Johnson,* 333 Ill. 469.

We can seen no impropriety or prejudice to the defendant by the court calling Dr. Rosen as a court's witness on the preliminary hearing as to the admissibility of the alleged confessions, as such action was very proper in order to prevent a possible miscarriage of justice, even though neither State nor the defense requested the witness to be called by the court. However, the court was in error in permitting the State, over objection, to bring out by

cross-examination and to refer in argument to statements of a party who had not been called and who had not testified before the jury. It is fundamental that both the defendant and the jury should be confronted with the witnesses themselves under oath and have the benefit of both their sworn testimony in chief and under cross-examination. A somewhat analogous situation was considered in *People* v. *Lettrich,* 413 Ill. 172. The cross-examination and argument by the State's Attorney could have given the jury the impression that Dr. Rosen had testified that the defendant Crump had no marks or bruises upon his body at the time of the doctor's examination without bringing to the jury's attention the doctor's qualification in his earlier testimony that he was only interested in Crump's lungs and not in pathology. The net result of such cross-examination and argument deprives the defendant of his constitutional right of confrontation of witnesses and the right to cross-examine witnesses against him, and it is impossible to speculate as to how much influence such fact had upon the jury reaching the conclusion they did as to guilt and infliction of the extreme penalty.

The errors assigned on the refusal of the court to give certain instructions have been carefully considered and are not well taken except for the one requested instruction that it was the duty of the jury to consider the prisoner's case as if he were a white man, for the law is the same as to both white and colored men, there being no distinction in principles in respect to color. The defendants in this case were all negroes. The deceased and most of the deceased's witness were Caucasians and the jury was composed entirely of white people. In the recent case of *People* v. *Kirkendoll,* 415 Ill. 404, we commented upon the lower court's refusal to give the same exact instruction and declared that refusal to give such instruction was error. The State attempts to distinguish the Kirkendoll case because of the fact that there the offense involved a colored man charged

with raping a white woman and because the court stated in the opinion that there was more than a reasonable doubt of defendant's guilt, suggesting that there can be no doubt as to the guilt of the defendant in this case and that the need and necessity of such an instruction is non-existent today. Although it is true that today, under our legal and social system, it should not be necessary to ask for, seek, or expect to receive any special instructions because of race, color or creed, yet we must recognize that our American system of justice and equality before the law is still administered by human beings and is therefore necessarily subject and exposed to the imperfections of human frailties and prejudices.

Extensive objection and argument is also made as to improper and prejudicial remarks by the prosecutors justifying a reversal. An examination of the record discloses numerous instances of remarks and conduct by counsel for both the People and the defendant made during the heat, tension and strain of a strenuously and bitterly tried capital case which, in the interest of a fair and impartial trial before a jury, would have been better left unsaid and undone. Inasmuch as this conviction must be reversed for errors hereinabove considered, we feel it is unnecessary to further extend this opinion with a detailed consideration of the claimed infractions of the rules.

The extreme penalty having been imposed in the case prompts us to attach increased importance to the errors herein discussed, and to reach the conclusion that defendant's conviction did not result from a trial free of substantial and prejudicial error. A new trial is ordered.

*Reversed and remanded.*