(No. 34225.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* PAUL CRUMP, Plaintiff in Error.

*Opinion filed Nov. 20, 1957—Rehearing denied Jan. 15, 1958.*

GEORGE N. LEIGHTON, of Chicago, for plaintiff in error.

LATHAM CASTLE, Attorney General, of Springfield, and BENJAMIN S. ADAMOWSKI, State's Attorney, of Chicago,

(FRED G. LEACH, BRUCE E. KAUFMAN, L. LOUIS KARTON, JOHN T. GALLAGHER, and ROBERT COONEY, of counsel,) for the People.

Per CURIAM: This case is again here on a writ of error to the criminal court of Cook County to review a trial wherein Paul Crump was found guilty of murder, his punishment being fixed at death. Paul Crump, David Taylor, Eugene Taylor, Harold Riggins, and Hudson Tillman were jointly indicted and tried for murder of one Theodore P. Zukowski who was shot and killed on March 20, 1953, while serving as plant guard at the Libby, McNeill & Libby packing plant in the city of Chicago. With the exception of Tillman, on the first trial each of the defendants was found guilty. Crump's punishment was fixed at death and the others 199 years imprisonment in the penitentiary. Tillman, who was granted a severance, testified for the State on the first trial but did not do so on the second. In *People v. Crump,* 5 Ill.2d 251, we reversed and remanded for a second hearing, predicating the result principally upon the ground that Tillman was notoriously a drug addict and the defense was precluded from developing that fact on cross-examination. It was contended that habitual users of opium are unreliable witnesses, thus Tillman's credibility would have been adversely affected if such proof had been allowed. This denial was held highly prejudicial.

We shall refer to Paul Crump in this opinion as the defendant. The record of this trial contains more than 1800 pages, and since our prior opinion contains a fairly complete account of what happened at the Libby, McNeill & Libby plant on March 20, 1953, we will omit all facts that are not pertinent to the legal issues here under consideration.

There have been assigned and argued many errors which the defendant contends justify a reversal. Much emphasis is placed on the alleged error committed by the trial court

in failing to hold that People's exhibits 22 and 23, defendant's written confessions, were improperly obtained. It is urged that they are the product of oppressive, unfair and illegal conduct on the part of the prosecuting officials, thereby depriving defendant of rights guaranteed by the fourteeenth amendment of the constitution of the United States.

It was on the evening of the same day Zukowski was killed that defendant was first arrested. Only accidentally was he picked up and questioned about several crimes. Three days later, after having allegedly been brutally mistreated, he confessed to nothing and was released.

Shortly thereafter Hudson Tillman surrendered himself to the sheriff of Cook County, and he then made a complete confession implicating all of the defendants named in the original indictment. On March 26, at about 3:00 A.M., ten police officers of the city of Chicago came into Crump's home and arrested him.

After being questioned for about nine hours, Crump and Taylor, at 1:30 P.M. on March 26, 1953, admitted their involvement in the Libby holdup in the presence of Richard Austin, First Assistant State's Attorney of Cook County, Irwin Bloch, Assistant State's Attorney, Chief J. T. O'Malley, Chief of Detectives, Capt. Frank Reynolds, 18th district, and several others. The question and answer interrogation taken by the court reporter embraces 25 pages in the abstract. This statement contained in much detail the facts involved in the planning and execution of the crime in question and their subsequent escape.

These are a few of the details elicited: Defendant had previously worked at the Libby, McNeill & Libby plant and knew of their practices of handling payrolls on each Friday; the defendant planned the robbery about two weeks before its occurrence while he was gathered with a few of his confederates in a lounge on Forty-third Street; the defendant had no weapon of his own but he prevailed upon

Hudson Tillman to supply the guns, which he did, consisting of a .32 revolver, .38 pistol and a sawed-off shot gun; it was arranged for the five to meet at 10:30 A.M. on March 20 under the L Station on Forty-third Street in Chicago and proceed to the plant in Harold Riggins's red Oldsmobile car; it was planned for Riggins to remain outside in his car and return to the plant at approximately 11:05 A.M.; the defendant led the procession into the plant for he was familiar with the operations, he struck the guard with a barrel of a shot gun and using the guard's revolver as well as his own, shot the guard Zukowski four times, causing his death; Tillman obtained the satchel and box containing the money; defendant Taylor, and Tillman wore blue hoods with two eyeholes that were made by the defendant from cloth purchased some place on Forty-third Street; the three participants wore rubber gloves that had been purchased at a drug store on Forty-third Street; the defendant went out another door than the one where Riggins was to appear so the defendant boarded a street car and went to the lake at Fifty-first Street where he threw his revolver in Lake Michigan "as far as I could possibly throw it."

Of considerable significance is the fact that the officers found the revolver at the place designated by the defendant. Of more than passing relevance is the fact that the inquiring officers asked the defendant about a grey felt hat, size 7, Dobbs make, bearing the name of J. G. Tobias, 2403 W. Madison Street, Chicago. Defendant said it was his hat that he wore on the day of the robbery and that it was lost in flight. In placing the hat upon his head, it was found that it fit him. The mask and gloves also found in the path of defendant's departure were identified by him.

It was developed that People's exhibit 22 contained some inaccuracies. These minor discrepancies were ironed out so that People's exhibit 23 was prepared containing the final draft of what was agreed to be the truth. This docu-

ment was signed on March 28, 1953, in the office of the State's Attorney of Cook County. Four civic leaders had been invited to witness this ceremony. Mrs. L. Robert Mellin was one of the four. It appears that she was a member of the board of education of the city of Chicago, and that her appointment was the result of endorsements of the leading clubs and civic groups of Chicago. She testified that the statements were read aloud by Mr. Austin and Mr. Bloch and that after defendant signed the statement she affixed her signature; that neither Paul Crump nor anyone else made any complaint to her, Mr. Austin or anybody else; that when Paul Crump was asked if he had been mistreated or abused they said "absolutely not, that they had wonderful treatment. Those were their words."

An examination of his testimony on the trial, however, reveals that defendant testified much to the contrary, stating at least twenty different specifications of mistreatment and duress. These are typical: He was struck with some object immediately upon being taken into custody on the occasion of his first arrest in connection with the crime charged; after being dragged by the back of the shirt, his feet were kicked out from under him, which caused him to fall on his side, and that a knee was pressed in his back, his tie was removed from his neck, his hands were tied behind his back therewith, and he was then placed against the wall of a building and searched; after being taken to the Tillman home he was shoved to the floor when he concluded to leave; he was kicked in the side when he failed to give his name; three officers kicked him into the cell at the Stockyard Police Station when brought to the lockup at 12 o'clock midnight on March 20, 1953, after his clothes were searched and he was questioned during the 45 minutes previous; he was struck in the face once with the hand by Sgt. Pierce a few minutes after midnight; at daybreak two officers in uniform came to his cell, and struck him when he refused to answer them; he was suspended by his arms for three hours

in the air with the "tops" of his toes touching the floor; he was struck in the stomach and kicked on his crippled foot while suspended and was threatened to be left hanging there if he did not talk. At the time of the second arrest he was held by the neck and pushed on the bed and a pistol put to him, and he was hit in the chest with revolvers by an officer "making" as if he was going to strike him; *etc.*

More than 50 witnesses testified on behalf of the State in refutation of these charges. Every police officer who had any part in the arrest, transportation, detention or questioning of the defendant denied mistreating, striking or in any way abusing the defendant or having seen any other person do so. The State's Attorney and two of his assistants denied making any threats or offers of inducement to obtain the confessions; the court reporter who made the stenographic notes of the confessions, denied there were any threats or inducements offered by any person in his presence; four citizens who witnessed the signing of the defendant's confessions, testified they heard the defendant and his codefendant say, in answer to questions as to whether they or any one of them was mistreated or abused, that each of them had been treated well; his own doctor and the doctor who witnessed the signing of the confession by the defendant could not find a bruise, welt or mark of physical violence or injury in their respective examinations of the defendant.

In defendant's testimony we find that he denied his involvement in the robbery at Libby, McNeill & Libby on March 20, 1953, stating that he was not near the premises on that date; that he did not shoot and kill Theodore Zukowski, nor did he strike anyone with the iron bar, nor did he see any of the several persons who appeared against him as witnesses on this trial. He readily admitted on cross-examination that he had been interrogated by the assistant State's Attorney concerning his involvement. He agreed that he had stated in his confession that he was 22 years

of age; that he was employed at Harvey, Illinois; that he worked in a material yard off and on for a period of two years; that he was making $54 per week take-home pay; that he had known Dave Taylor about eight months and that he had known Gene Taylor about six months, *etc.* But when asked about anything in his confession that pertained to the crime in question, the defendant flatly denied making any statement that even implied his connection therewith.

On rebuttal the State called the deputy clerk, Samuel Rosen, of the criminal court of Cook County, who had with him the official records of the criminal court. He testified that he had the record showing the order for the impaneling of the grand jury for the November term, 1946, the return of three indictments against Paul Crump for armed robbery, numbers 46-2507, 46-2508, and 46-2509. When the State's Attorney sought to have the docket entries marked as an exhibit for identification, defense counsel interposed the following: "I can make it easier for you, the witness is going to give a statement to the effect that a grand jury returned an indictment against Paul Crump, alleging robbery while armed. The statement in addition thereto will be that Paul Crump, came into court, pleaded not guilty to that charge; and that the witness is also going to state that the record shows that there was a waiver of the jury by the defendant at that time in the year 1946; that there was a hearing, trial by the court without a jury and a finding of guilty and judgment was entered on the finding."

The witness then read from the journal the proceedings relative to the foregoing indictments. There was a finding of guilty as to each of the three indictments and defendant's age was found to be sixteen years. The objection in the trial court was to the reading of the records of the multiple convictions to the jury. Defendant's counsel said he had no quarrel about the conviction of Crump in 1946 but ob-

jected to a showing of the details when the only purpose was to affect his credibility. We do not believe that the reading of the facts contained in the official record, under the circumstances here appearing, constituted error. The official record would have been properly identified but for the volunteered stipulation of defense counsel. The statute (Ill. Rev. Stat. 1955, chap. 38, par. 734) authorizes the showing of a prior conviction to affect the credibility of a witness. This court has held frequently that this may be established by the production of the record of conviction or an authenticated copy of the record. *People* v. *Parks,* 321 Ill. 143; *People* v. *Bartkus,* 7 Ill.2d, 138, 142.

Considerable attention is devoted by counsel for defendant to the discussion of alleged errors of the trial court in restricting both his cross and direct examination of many witnesses. No good purpose would be served in prolonging this opinion to the extent required to give detailed consideration to this complaint. Suffice it to say, that we find no merit in this contention.

It is also argued that the prosecution's argument was inflammatory and prejudicial. Counsel who represented defendant at the trial undertook to convey the idea to the jury that since this case had lingered for three years there must be some doubt about defendant's guilt. Such an unfair argument deserved severe treatment and received it.

Defense counsel also found occasion to discuss with much emphasis the failure to produce Tillman, Taylor and Riggins as witnesses, stating that they are out roaming the street. The State's Attorney replied to this argument effectively and appropriately. His argument was predicated upon the evidence adduced and logical inferences arising therefrom, and was in answer to arguments made by defendant's counsel. The defendant was permitted to argue in his own behalf. It was a splendid effort to evoke sympathy and humane consideration. But for the overwhelming proof of guilt, the result could have been different.

Two juries with the approval of two judges have found defendant guilty and decreed the extreme penalty. We have examined the long record critically and considered all claims of alleged mistakes in the trial. We find not one of a substantial or reversible character.

The judgment of the criminal court of Cook County is affirmed. The clerk of this court is directed to enter an order fixing Friday, January 31, 1958, as the date on which the sentence entered in the criminal court of Cook County on said judgment shall be executed. A certified copy of this order shall be furnished by the clerk of this court to the sheriff of Cook County.

*Judgment affirmed.*