**UNITED STATES of America ex rel. Paul CRUMP, Petitioner-Appellant,**

v.

**Frank G. SAIN, Sheriff of Cook County, Illinois, Respondent-Appellee.**

**No. 13287.**

United States Court of Appeals Seventh Circuit.

Oct. 16, 1961.

Rehearing Denied Nov. 14, 1961.

George N. Leighton, Bernard H. Sokol, Chicago, Ill., for appellant.

Daniel P. Ward, State's Atty., Edward J. Hladis, Asst. State's Atty., Chicago, Ill., for appellee.

Before HASTINGS, Chief Judge, and DUFFY and SCHNACKENBERG, Circuit Judges.

SCHNACKENBERG, Circuit Judge.

After reversal and remandment for proceedings consistent with our opinion of March 20, 1959, United States ex rel. Crump v. Sain, Sheriff, 264 F.2d 424, the district court permitted relator Paul Crump to file an amended petition, which Frank G. Sain, sheriff of Cook County, Illinois, respondent, answered. That answer included the production of the entire record of the Supreme Court of Illinois in causes Nos. 33334 and 34225, adjudicating the contentions of relator, and reported in People v. Crump, 5 Ill.2d 251, 125 N.E.2d 615, 52 A.L.R.2d 834, and 12 Ill.2d 402, 147 N.E.2d 76, respectively. A hearing was had, during which the district court heard the testimony of relator and William P. Gerber, his attorney.

The court entered findings of fact and conclusions of law, and dismissed the petition. The court found specifically that relator's confession was given "freely and voluntarily." Relator appealed.

The record shows what we now relate.

On March 20, 1953, a guard in a stockyards plant was killed during a robbery. The same day, Chicago police officers arrested relator and he was questioned for three days and then was released, through the efforts of his lawyer, attorney William Gerber of the Illinois bar. On March 26, 1953, ten police officers went to relator's home and arrested him without a warrant. He was taken to the criminal court building in Chicago. A stop was made at a restaurant where coffee and a doughnut were purchased for relator. He appeared in a "lineup" that morning, was questioned by an assistant state's attorney and remained overnight at a police station.

On the morning of March 27, he was returned to the criminal court building, and was again questioned with another

suspect, Eugene Taylor. Although Taylor admitted some part in the robbery, relator denied any implication. About noon, relator was in the office of first assistant state's attorney Richard Austin. Relator told Austin that he wanted to confer with his lawyer, Gerber, who was known to Austin. After the latter called Gerber's office, he told relator that Gerber was on his way. They waited in the office alone until Gerber's arrival, whereupon Austin left his office to Gerber and relator for about an hour and a half for a conference. Gerber had handled some legal matters for relator's family, and he represented relator in the first trial of this case.

Both upon his motion to suppress and upon the second trial of his case, relator testified that, after his private meeting with Gerber in Austin's office, relator summarized in the presence of Austin and two or three police officers, his attorney's advice to him on that occasion, as follows:

"Well, they came into the room, and Mr. Gerber addressed me in front of those men I have named. And he told them, 'Now, Dick, you hear this. I am advising my client not to say anything to anyone except upon my advice.' And he told me, he says, 'Paul, and if anyone asks you for a match, you tell them you can't give it to them unless you have the advice of your counsel.' He said, 'Do you understand?' I said, 'Yes, sir.' And he asked Mr. Austin and the rest of them did they understand it. They said, yes. Then he walked out."

In the proceedings in the district court, Gerber testified that Austin said:

"I will call you if there is [sic] any further statements to be taken."

There is no evidence to this effect in the second trial, which resulted in the challenged conviction. The relator, however, did testify as to an alleged agreement by Austin in the first trial. Austin denied the existence of any such agreement.

Thereafter relator was taken to the lockup room where he remained until 10:30 p. m. At this time, according to relator's testimony at his second trial, he requested to see his attorney but Austin told him that Gerber was "in jail for consorting with criminals".[1] He also testified that Eugene Taylor told him the same thing. On cross-examination on the motion to suppress, the relator testified that he believed he told Austin that he did not want to say anything until he saw his lawyer. During re-cross-examination on the second trial he testified that he believed Austin said his lawyer was in jail for consorting with criminals. On the trial, Austin denied that he made any such statement.

On the other hand, at his first trial, relator did not attribute to Austin this statement about Gerber's being in jail for consorting with criminals. He stated that either Gene or David Taylor made this statement about Gerber.

According to relator's testimony, Austin said he had a warrant for the arrest of relator's wife for an "active part in the preparation of this", and that is when relator "started talking." At the second trial Austin, in testifying, denied making such a statement.

During the course of the federal habeas corpus proceeding, relator insisted that he had requested innumerable times that he see his attorney. His own testimony in the state criminal proceeding, however, mentions only two requests: the first request (which Austin honored when he called Gerber) and the second request which led to the alleged statement that Gerber was in jail, which is disputed by Austin's testimony.

Relator confessed orally to Austin the night of March 27. Thereafter he slept in the witness quarters of the county jail building. The following morning, March 28th, relator had breakfast in the administrative building of the county jail.

1. This jargon may have some meaning to those possessing expertise in jail circles. We do not pursue it.

He signed a statement at the state's attorney's office on that morning in the presence of a number of disinterested outsiders.

When admitted to the county jail, relator was given a physical examination by Dr. Stanley E. Telser, the examining physician, who found old scars on various parts of the body and a small abrasion on the left hand.

On the morning relator signed the confession, he was examined by Dr. William A. Brams, to whom he made no complaints about his condition or any type of physical injury. Dr. Brams testified that Austin asked relator how he had been treated while in custody and relator answered that he was well-treated. It was then that Dr. Brams had relator remove his clothes, made a complete physical examination, looking for areas of tenderness or marks of recent violence or physical injury, and found none. Dr. Brams testified that he found no welts nor marks of violence or injury and no bruises except old ones.

The district court conducted a hearing, pursuant to our remandment of this case, to determine the facts. As a result thereof the court made findings of fact including one that relator's confession was given freely and voluntarily. The court had before it, not only the complete documentary report of the state court proceedings, but also the relator and his attorney testifying in open court. Inasmuch as most of the questions arising upon the record before us involve the credibility of witnesses, the determination of the district court upon these issues of fact is highly persuasive in our disposition of this appeal.

■ Section 52(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A., is applicable to habeas corpus proceedings. Farrell v. Lanagan, 1 Cir., 166 F.2d 845, certiorari denied, 334 U.S. 853, 68 S.Ct. 1509, 92 L.Ed. 1775; Rushing v. Wilkin-son, 5 Cir., 272 F.2d 633, certiorari denied, 364 U.S. 914, 81 S.Ct. 280, 5 L.Ed. 2d 229. Thus the requirement of rule 52(a) that a trial judge's findings are reversible only if clearly erroneous is applicable to this case.

■ It cannot be successfully maintained that the weight to be given findings of fact by the district court under rule 52(a) is less because of the argument made here that there existed a "totality of circumstances which produced the confession".[2] The use of this comprehensive phrase cannot avert a consideration of the evidence of proven facts. Such evidence is subject to the same tests as to credibility, materiality and relevancy as other evidence.

We are however led to give particular attention to relator's charge: "His lawyer's counsel was circumvented." Although little argument in this court has been directed to this aspect of the case, the charge is implicit that assistant state's attorney Austin infringed upon relator's right to counsel. While, in view of Austin's denial of relator's charges, supported by the finding of the district court, we might well not discuss the matter further, we shall do so. The cases are legion where the repeated demands for counsel by a person in custody are refused by law officers. By contrast, in this case, when relator asked for Gerber, who was his family's attorney, Austin in relator's presence telephoned Gerber's office and relayed the request, which was immediately complied with by Gerber. When the latter came, Austin's office was surrendered to Gerber and relator for a lengthy private conference. Thereafter, despite Gerber's advice to relator not to make any statement of any kind without consulting him, relator, evidently in disregard of his lawyer's instructions, made a full confession. There is no contention that relator was a minor or of weak mentality. He had been a high school stu-

---

**2.** As stated in relator's brief, he urges: (a) the appellant was held incommunicado; (b) his arraignment was delayed in violation of the laws of Illinois; (c) his lawyer's counsel was circumvented; (d) he was ill when he was arrested without a warrant in the middle of the night and had been running a high fever; (e) he was kept without food during his long detention until after he confessed.

dent. Why he decided to proceed as he did was his own affair. No authority has been cited, and we are not prepared to hold, that under these circumstances the state's attorney became a guardian or representative of the accused. Having demonstrated as people's counsel an eminent fairness to relator in putting him into conference with his own personally chosen lawyer, Austin's paramount duty as a prosecutor reasserted itself and he and the relator were meeting at arm's length. We find no overreaching which contributed to the making of the confession.

However, in the face of the foregoing facts, established affirmatively by the record in this case, relator's counsel frankly asks us to surmise what occurred between the afternoon of March 27th, when relator summarized Gerber's instructions, and 10:30 that evening. His counsel now asks "of what possible legal effect was the presence of counsel when it was followed by ten hours of custody by police?" If the record contained any showing of police brutality or other misconduct during that period, such an inquiry would be pertinent. There is none, either from the mouth of relator when a witness in the district court or otherwise. On the record before us this question is asked in a vacuum.

In this court relator relies upon the fourteenth amendment to the Constitution of the United States. He cites Rogers v. Richmond, 365 U.S. 534, 81 S. Ct. 735, 5 L.Ed.2d 760; Reck v. Pate, 367 U.S. 433, 81 S.Ct. 1541, 6 L.Ed.2d 948; Culombe v. Connecticut, 367 U.S. 568, 81 S.Ct. 1860, 6 L.Ed.2d 1037.

In Crooker v. California, 357 U.S. 433, 78 S.Ct. 1287, 2 L.Ed.2d 1448, a conviction for murder was affirmed, although certiorari had been granted by the Supreme Court because of the serious due process implications that attend state denial of a request to employ an attorney. Our comparison of the facts in Crooker with those in the case at bar convinces us that relator's constitutional rights were not violated in this respect. Moreover, it was pointed out, 357 U.S. at page 437, 78 S.Ct. at page 1290, in Crooker that there was there involved a failure of state authorities to comply with local statutes requiring that an accused promptly be brought before a magistrate. The court held that this bare fact does not render involuntary a confession by the one so detained, citing Fikes v. Alabama, 352 U.S. 191, 77 S.Ct. 281, 1 L.Ed.2d 246.

Crooker was followed by Cicenia v. Lagay, 357 U.S. 504, at page 509, 78 S. Ct. 1297, at page 1300, 2 L.Ed.2d 1523, where the court said:

"In contrast, petitioner would have us hold that any state denial of a defendant's request to confer with counsel during police questioning violates due process, irrespective of the particular circumstances involved. Such a holding, in its ultimate reach, would mean that state police could not interrogate a suspect before giving him an opportunity to secure counsel. Even in federal prosecutions this Court has refrained from laying down any such inflexible rule. See McNabb v. United States, supra [318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819]; Mallory v. United States, 354 U.S. 449 [77 S.Ct. 1356, 1 L.Ed.2d 1479]. Still less should we impose this standard on each of the 48 States as a matter of constitutional compulsion. It is well known that law-enforcement problems vary widely from State to State, as well as among different communities within the same State. This Court has often recognized that it is of the 'very essence of our federalism that the States should have the widest latitude in the administration of their own systems of criminal justice.' Hoag v. New Jersey, 356 U.S. 464, 468 [78 S.Ct. 829, 833, 2 L.Ed.2d 913]. See Maxwell v. Dow, 176 U.S. 581 [20 S.Ct. 448, 44 L.Ed. 597]; Twining v. New Jersey, 211 U.S. 78 [29 S.Ct. 14, 53 L.Ed. 97]. The broad rule sought here and in Crooker would require us to apply the Fourteenth Amendment in a manner

which would be foreign both to the spirit in which it was conceived and the way in which it has been implemented by this Court."

For the reasons herein set forth, we find no error in the proceedings and entry of the order of the district court on November 23, 1960 dismissing the petition for a writ of habeas corpus herein and we hereby affirm said order as the final judgment of said court in said cause.

Affirmed.