THE STATE, DEFENDANT IN ERROR, v. CAMILL MARTIN, PLAINTIFF IN ERROR.

Submitted July 8, 1918—Reargued November 29, 1918—Decided March 3, 1919.

1. A plea of *non vult* to an indictment for murder is not an absolute right of the accused under the statute of 1917 (*Pamph. L.*, p. 801) and a refusal by the court to accept such a plea, when tendered, is not an error subject to review. Such a plea is not efficient until accepted, and its acceptance rests in the discretion of the court.

2. A recommendation by the jury that the punishment of one convicted of murder of the first degree shall be imprisonment for life, is no part of the verdict of conviction, for the recommendation is only allowed after the jury has agreed upon its verdict of murder of the first degree. The facts upon which the conviction rests have no necessary connection with the recommendation, and an instruction to the jury that they may consider the testimony, to which their attention is specifically called, tending to show the character of the crime and also its effect upon society if a recommendation be made, in determining the question of recommendation, is not a permissible comment on evidence, for the recommendation is discretionary and requires no consideration of the facts upon which the conviction is based. No facts being necessary to justify the exercise of the discretion, there are none to comment on in that matter, and, a charge concerning the facts, which tends to influence the jury on the question of recommendation cannot be excused upon the ground that it is a mere comment on the testimony.

3. The defendant in a homicide case requested the court to charge that if the jury found him guilty of murder in the first degree, they might at the same time recommend imprisonment for life. This was refused except as charged. The court had charged, in substance, as requested, but followed it by an instruction which might tend to influence the jury against a recommendation, and minimize the effect of the request. *Held,* that the request was proper, and was not complied with by the instructions given.

4. The right given by the statute to a jury to recommend imprisonment for life upon a conviction of murder of the first degree, is subject to no restrictions and need not rest upon any testimony, being within the unlimited discretion of the jury, and any instructions by the court which tend to influence that discretion in any way, is beyond the power of the court and is erroneous.

On error to Essex Oyer and Terminer Court.

For the defendant in error, *J. Henry Harrison* and *Wilbur A. Mott.*

For the plaintiff in error, *Harrison P. Lindabury* and *Clarence S. Blake.*

The opinion of the court was delivered by

BERGEN, J. The plaintiff in error was convicted of murder of the first degree without recommendation as to pun-

ishment, and by a writ of error seeks to reverse that judgment.

The first point argued in support of this writ is the refusal of the trial court to accept a plea of *non vult* tendered by the defendant, which he claims is his right under section 107 of the Crimes act, amended in 1917 (*Pamph. L., p.* 801). Prior to the amendment of 1917, section 107 prohibited the acceptance of a plea of guilty on an indictment for murder, with the proviso that nothing in the act should prevent the accused pleading *non vult,* the sentence to be imposed, *if such plea be accepted,* to be the same as upon conviction of murder of the second degree.

By the plain language of the act, as it then stood, acceptance of the plea by the court was a limitation on the right of an accused. That such a plea was not of right but required its acceptance by the court, was held by Mr. Justice Van Syckel, speaking for this court in *State* v. *Henson,* 66 *N. J. L.* 601, and that rule has been consistently followed by our courts. The real question raised here is whether the addition of the words "either imprisonment at hard labor for life," preceding the words, "or the same imposed upon a conviction of murder of the second degree," in any way alters the right of an accused, from one of grace to that of an absolute privilege.

We have no doubt that they do not, for the added words relate alone to the penalty flowing from the acceptance of such a plea, and merely enlarge the discretionary power of the court as to character of punishment. Formerly it was limited to that fixed by law as a punishment for murder of the second degree, while now it may be that, or imprisonment for life.

There was no error in the refusal to accept the plea tendered.

The next point is based on the refusal of the court to charge as requested by the defendant, as follows: "If, after considering all the evidence, you find the defendant guilty of murder in the first degree, under your oaths as jurors, you

may, at the time of rendering such verdict, recommend imprisonment at hard labor for life." The defendant was entitled to this instruction under the statute of 1916 (*Pamph. L.,* p. 576), which provides that every person convicted of murder in the first degree shall suffer death, "Unless the jury at the time of rendering the verdict in such case shall recommend imprisonment at hard labor for life, in which case this, and no greater punishment shall be imposed."

The trial judge refused upon the ground that he had so instructed the jury, and the defendant complains that the request was not lawfully complied with, because the court, in its charge on this point, so instructed the jury as to deprive the defendant of the benefit of his legal right under the statute upon which the request was rested. As the state urges that the instruction objected to was a mere comment on the evidence, it may be of some assistance in considering the charge, which the court held was a compliance with the specific request refused, to first deal with the legal status of the recommendation the jury are authorized to make. The statute does not make it a part of the verdict, for the verdict determines the question of the guilt or innocence of the accused, and that must be arrived at, and be of murder of the first degree, before the question of recommendation arises, which is a distinct matter, for the jury may agree on a verdict that the accused is guilty of murder of the first degree, but not be able to agree to a recommendation. While a jury may be influenced to recommend life imprisonment as a punishment by the very matters which evidenced the guilt of the accused, and perhaps properly so, still in law the jury are not bound to consider such evidence in determining whether to make or refuse a recommendation. That matter is entirely discretionary with the jury and does not require the support of evidence, for it is not a finding of fact, and the trial court is not justified in suggesting to the jury the consideration of the character of the crime, as shown by the evidence produced on the question of the guilt or innocence of the accused, as a reason for withholding the recommendation, and anything

which the court may say to the jury with that object in view cannot be excused as a comment on the evidence, for the evidence has no necessary relations to the recommendation which the statute authorizes, but only to the issue presented to the jury by the testimony, and that is the guilt or innocence of the accused.

Returning to the consideration of the question relating to the refusal to instruct the jury as requested, upon the ground that it had been charged, we start with the legal rule observed in this state, that an erroneous instruction to the jury is not cured, although the court also correctly charged the law, because a jury are not to be allowed to judge which is right between two conflicting statements of the law (*State* v. *Clayton,* 83 *N. J. L.* 673), and so if in this case the court, having charged in substance the request, subsequently, by further instructions, detracted from the request by charging as the law of the case an incorrect rule, the effect of which was to minimize the application of the legal principle requested, the accused suffered a manifest wrong.

The trial court in instructing the jury first dealt with the question of the guilt or innocence of the accused, and after it had concluded this, then it proceeded to instruct the jury regarding the law of 1916 relating to the recommendation of imprisonment at hard labor for life, and at the outset said that the jury might, if they found the accused guilty of murder in the first degree, recommend imprisonment at hard labor for life, and that the statute fixed no standard or principle to guide a jury in determining in what kind of cases the jury ought to render a verdict of murder of the first degree, "Which will be followed by the death penalty, or the kind of cases in which the jury should render a verdict of the second degree with the recommendation of life imprisonment."

The court then continued its instruction as follows: "Therefore the court cannot as a matter of law instruct the jury that there are certain standards of conduct or principles upon which the jury should act in arriving at a conclusion as to

whether or not they will impose the death penalty. In reaching the conclusion as to what the penalty shall be a very grave responsibility is placed upon the jury. It would seem that you ought to consider the condition of the defendant and his interests, and that you ought to consider the condition of the state and the interests of society. It is not a mere question of prejudice upon which one may lightly vote, it seems to the court, but it is the exercise of a high function that may seriously affect the welfare of society. Human life is sacred. If it be treated lightly will that result in a condition of affairs which will bring about murders? Is the punishment of life imprisonment sufficiently severe or must the punishment be death? Does the penalty of death really carry out the purpose that is claimed for it? These and such other matters, as you may deem proper, it seems to the court, are perfectly proper for the jury to consider in exercising a function of this character. You know that sometimes it is said that penalties are meted out by the law for the purpose of protecting society, as an example to others; sometimes to reform the individual; sometimes to redeem the individual. All these matters, it appears to the court, are left by the statute to your determination, and you may, in your discretion, consider them. If the contention of the state is adopted this is one of the most cold-blooded, atrocious, wicked and depraved murders in the first degree that can be conceived of; the purpose was to rob the deceased of his rings, stud, pocketbook and money, while the victim lay breathing, apparently his last breath, exclaiming 'Oh, Oh,' the robber and murderer took the rings from his finger, broke the stud from his shirt bosom and relieved him of the contents of his purse; it was apparently done without any motive borne of any instinct even faintly related to any righteous or other provocation."

This was plainly no response to the request to charge, because it instructed the jury that they might, in considering the question of a recommendation to imprisonment for life, consider all the matters which the court recited to the jury,

and the manner of putting it to the jury was such as might influence them to withhold any recommendation, which was entirely beyond any judicial function which the court possessed. The jury are not required to consider whether punishment of life imprisonment was sufficient to prevent a condition of affairs that would bring about murders, or whether the penalty of death carried out the purposes that is claimed for it, nor was it proper to instruct the jury in this connection that if the contention of the state was adopted, that is, if the jury found the accused guilty as the state contended, then the murder was one of the most cold-blooded, atrocious and wicked in the first degree that could be conceived of.

What inference would any jury draw from this, if, having found the defendant guilty of murder in the first degree they were considering a recommendation to life imprisonment, manifestly its influence on the jury would be that under the matters submitted by the court, there was no justification for a recommendation, and it undoubtedly would have a tendency to influence a jury to withhold the recommendation.

We think the accused was entitled to have the requested instruction given without the modification of its application indicated by the charge of the court, and that its effect was illegally minimized by the instructions which the court gave to the jury on the very subject-matter of the request.

It was clearly an undertaking by the court to influence the discretionary power vested by statute in the jury, and, as was said by Mr. Justice Gray, speaking for the Supreme Court of the United States, construing a similar statute, in *Winston* v. *United States,* 172 *U. S.* 303, 313, "The act does not in itself prescribe, nor authorize a court to prescribe, any rule defining or circumscribing the exercise of this right; but commits the whole matter of its exercise to the judgment and consciences of the jury."

It is unnecessary in this case to further analyze this charge, it is enough to say that the court, in dealing with the question of recommendation, told the jury, in substance and effect, that if the jury convicted the accused of the crime

charged to him, it was one of the most cold-blooded, atrocious murders of the first degree that could be conceived of, and its only purpose, in the connection it was used, was to influence the jury against a recommendation to imprisonment for life.

This was not a comment on evidence which the court was justified in making, for, as we have said, the court had no power to instruct the jury as to the effect of the evidence upon the question of recommendation, and no one reading this charge can escape the conclusion that the purpose of the trial court was to influence the jury against recommending imprisonment for life because of the enormity of the crime, as he pictured it to the jury.

This he had no legal right to do and the judgment will be reversed.

WALKER, CHANCELLOR (dissenting). I agree with the views expressed in the majority opinion, to the effect that a plea of *non vult* to an indictment for murder is not an absolute right of the accused, and that a refusal by the court to accept such a plea is not subject to review; also I agree that a recommendation by the jury that the punishment of one convicted of murder in the first degree shall be imprisonment for life, is not a part of the verdict—as the recommendation is allowed by our statute only after the jury has agreed upon a first degree verdict; but I dissent from the holding that the facts upon which the conviction rests have no legal connection with the recommendation upon the theory that the recommendation is discretionary and requires no consideration of the facts upon which the conviction is based. Lest I be misunderstood I desire to say that I also agree that any instructions by the judge which tend to influence the jury in making such a recommendation is beyond his power. I concede that it is discretionary with the jury to make such recommendation, but am of opinion that that discretion may properly be arrived at only by a consideration of the evidence. The learned justice who wrote the majority opinion in support of the proposition that the recommendation resides in a wide

discretionary power dissociated from the evidence, quotes the Supreme Court of the United States, speaking by the late Mr. Justice Gray construing a similar statute, in *Winston* v. *United States,* 172 *U. S.* 303. My reading of the opinion in Winston *v.* United States indicates that it holds that the jury may decide not to punish a first degree murderer capitally upon consideration of the evidence, and also irrespective of the evidence. Its value, therefore, as a precedent either way, it seems to me, is questionable.

The learned justice who wrote the majority opinion in this court quotes from Winston *v.* United States, as follows:

"The act does not itself prescribe, nor authorize the court to prescribe, any rule defining or circumscribing the exercise of this right; but commits the whole matter of its exercise to the judgment and the consciences of the jury."

This is one of several sentences in a paragraph. In the sentence just quoted, I discover nothing which either restrains the jury to a consideration of the evidence or permits them to travel outside of it in making their recommendation. And one would expect to fine some qualification or limitation in what follows in the paragraph. And it is to be found in the next sentence, which reads:

"The authority of the jury to decide that the accused shall not be punished capitally is not limited to cases in which the court or the jury is of opinion that there are palliating or mitigating circumstances. But it extends to every case in which, upon a view of the whole evidence, the jury is of opinion that it would not be just or wise to impose capital punishment."

Here is an express qualification that the recommendation of the jury should be made only *upon a view of the whole evidence.* If the United States Supreme Court's opinion had ended there, I think it would necessarily have to be held that that tribunal's determination was that the recommendation could properly be made only upon a consideration of the evidence. But that court goes on in the concluding sentence of the paragraph as follows:

"How far considerations of age, sex, ignorance, illness or human passion or weakness, or sympathy or clemency, of the irrevocableness of an executed sentence of death, or apprehension that explanatory facts may exist which have not been brought to light, or any other consideration whatever, should be allowed weight in deciding the question whether the accused should or should not be capitally punished, is committed by the act of congress to the sound discretion of the jury, and of the jury alone."

Of course, "age, sex, ignorance, illness or intoxication" would all be matters appearing by evidence, and "human passion or weakness" might, too, be so made to appear; but "sympathy or clemency, or the irrevocableness of an executed sentence of death, or an apprehension that explanatory facts may exist which have not been brought to light, or any other consideration whatever," would of necessity be entirely outside of the evidence

I am unable to lay hold of Winston *v.* United States as an authority either way on the proposition under consideration, because, as I view it, it decides the question both ways. I am, however, decidedly of opinion that our act of the legislature intends that the jury should be guided by the evidence in determining whether or not to recommend life imprisonment at the time of convicting an offender of murder in the first degree. The provision in the act (*Pamph. L.* 1916, *p.* 576) is that if such recommendation be made, life imprisonment shall be imposed. This act gives the jury the right, practically, to pass sentence of life imprisonment instead of death. Before the passage of that act the law provided but one penalty for murder in the first degree, and that was death. If the law formerly had been that upon conviction of murder in the first degree the prisoner should be executed or imprisoned for life in the discretion of the court, who will say that the law intended that the judge might travel outside of the evidence, and, as a mere matter of caprice, sentence a man to imprisonment for life instead of to death.

For all, or almost all, other crimes than murder the law provides elasticity in the matter of sentence, usually imprison-

ment not exceeding a certain term, or a fine not exceeding a certain amount, or both. I have always thought that a judge in passing sentence upon offenders convicted for various crimes imposed a sentence upon consideration of the evidence before him. And when a jury is substituted for the judge in the matter of practically imposing the sentence, I think that the theory of the law is that the jury should be guided by the evidence, and, where mitigating circumstances appear in the evidence, the recommendation to imprisonment for life may, with propriety, be made, but where the murder is without palliation or mitigation that the recommendation should be withheld. I agree that the jury should be instructed that they have an absolute discretion in the matter of making or withholding the recommendation, provided, however, they are told that their determination to do the one or the other is confined to and arises out of a consideration of the evidence.

The trial judge in the case at bar instructed the jury, as a matter of law, that there were no standards of conduct or principles upon which the jury should act in arriving at a conclusion as to whether or not they would impose the death penalty; he then proceeded to suggest to the jury that they ought to consider certain interests of the state and of the defendant, and then after stating some such, said that those and such other matters as they might deem proper were perfectly proper for the jury to consider; and further, that all those matters were left by the statute to the jury's determination, and that they might in their discretion consider them; but this was not reversible error, because at every turn it was left to the jury to say which of the alternatives under the statute they would denounce against the defendant in case they convicted him of murder in the first degree. A conviction in a criminal case will not be reversed for error in an instruction to the jury which could not have prejudiced the defendant; and this one, in my judgment, could not have done so.

The statement to the jury by the trial judge that if the contention of the state were adopted, the case was one of the most cold-blooded, atrocious, wicked and depraved murders in

the first degree that can be conceived of; the purpose was to rob the deceased of his rings, stud, pocketbook and money, while the victim lay breathing, apparently his last breath, exclaiming, "Oh, Oh!" The robber and murderer took the rings from his finger, broke the stud from his shirt bosom and relieved him of the contents of his purse; it was apparently done without any motive borne of any instinct even faintly related to any righteous or other provocation—did not constitute error, as it is not legally objectionable for a trial judge in a criminal case to state to the jury what the prosecution claims the proof shows with reference to a material fact; and these last-mentioned statements were not an assertion by the judge as to the acts and purposes of the defendant, but left the question to be decided by the jury from the evidence; it was a statement of the contention of the state with reference to the facts, and not an opinion of the judge as to what the facts were, and was therefore not objectionable.

I am unable to discover any reversible error in the record before me, and shall therefore vote to affirm the judgment under review.

WHITE, J. (dissenting). I understand it is a matter of common knowledge that prior to the act of 1916 many first degree murderers escaped punishment because of a reluctance on the part of juries to find verdicts requiring the death penalty, and that an effort was made to remedy this condition by attempting to enact legislation abolishing capital punishment, but the attempt failed, and instead, that the legislature enacted the act of 1916 authorizing a verdict of first degree murder with a recommendation of life imprisonment, and providing that the punishment in case of a verdict without such a recommendation should be death, but with such a recommendation it should be life imprisonment. As a result of this act it was thought that juries which would not find verdicts involving the death penalty, would find verdicts involving imprisonment for life.

It is now proposed, as I view it, to destroy, by judicial con-

struction, the remedial effect of this legislation by holding that the recommendation is not a part of the verdict, but is rather in the nature of a sentence, and that consequently the jury must first agree upon a verdict involving the death penalty before it can consider the recommendation for life imprisonment; and that having agreed on the death penalty verdict, if one juror declines to agree to the recommendation, the prisoner must be electrocuted, even though the other eleven jurors wanted to make the recommendation, and in fact would not have agreed to the verdict except upon the understanding that there would be a recommendation. Of course in such a situation the eleven jurors might decline to come into court and render the verdict without the recommendation, thus demonstrating that the recommendation is in fact a part of the verdict, but under the logic of the majority opinion they would in so doing be acting contrary to law and violating their oaths as jurymen. I suppose under that opinion the trial court upon proper request would have to charge the jury that before considering the recommendation at all they must first find the prisoner guilty of murder in the first degree, and having done this they may consider whether or not to make the recommendation, and that then unless the jury unanimously agreed to the recommendation, it would be their sworn duty to render a verdict of guilty of murder in the first degree without any recommendation. If such instruction were given clearly the jury could not disregard it without violating their oaths. Can it be that in doing exactly what the act of 1916 was passed to enable them to do, viz., agreeing on a verdict with a recommendation where they would not agree upon a verdict without a recommendation, the members of the jury are perjuring themselves? I cannot think so. Then, again, suppose the jury contain one or more members conscientiously opposed to capital punishment, are they to be required to first vote for a verdict of guilty, entailing that punishment, whereas, obviously, the purpose of the act of 1916 was to enable them to vote for a verdict of guilty not involving capital punishment? Is the court prepared to

say that since the passage of the act of 1916 conscientious scruples against capital punishment are to continue as heretofore a disqualification for service upon murder juries, although the act was passed to accommodate just such scruples?

I think the recommendation was intended by the legislature to be and by the very language of the act is a part of the verdict, and that, consequently, of course, the jury may be assisted in finding this as well as all other elements going to make up the verdict, by the proper comments of the court upon the evidence and upon the scope to which their considerations may extend.

I do not understand that the comment of the learned trial judge in this case would be considered improper, under our cases, if it had been directed to the part of the jury's duties involved in reaching a conclusion as to the guilt of the prisoner, and that being the case, I cannot see why the comment was not equally proper as applied to the part of the verdict to be covered by the presence or absence of the recommendation, provided only that no limitation other than the free and uncircumscribed judgment and conscience of the jury was imposed. In *Winston* v. *United States,* 172 *U. S.* 303, the jury were told they must be governed by what they should find from the evidence, was the degree or circumstances of the crime, but in the case *sub judice* the learned trial judge not only told them that the statute fixed no standard or principle to guide them, but he further told them that they might consider not only the evidence, but everything else, including whether or not the infliction of the death penalty really carries out the purpose for which it is intended. He left the jury absolutely untrammeled, just as does the statute, except by their judgment and their conscience, and if his comment upon the evidence had a part in moving their conscience to omit the recommendation, as they did, in this case, a careful reading of the evidence, including the prisoner's confession of this cold-blooded horrible murder, has strengthened my belief that such comment serves a useful and highly important public purpose and should not be prohibited.

*For affirmance*—THE CHANCELLOR, TRENCHARD, BLACK, WHITE, HEPPENHEIMER, WILLIAMS, JJ.   6.

*For reversal*—THE CHIEF JUSTICE, SWAYZE, PARKER, BERGEN, MINTURN, KALISCH, TAYLOR, GARDNER, JJ.   8