**Application of Vincent CICENIA**
**For a Writ of Habeas Corpus.**
**Civ. No. 274-56.**

United States District Court
D. New Jersey.
June 28, 1956.

Dickinson R. Debevoise, Newark, N. J., for petitioner.

Charles V. Webb, Jr., Essex County Prosecutor, by C. William Caruso, Sp. Legal Asst. Prosecutor, Newark, N. J., for respondent.

FORMAN, Chief Judge.

This is a petition for a writ of habeas corpus by a prisoner presently serving a life sentence for murder which was imposed after his plea of non vult by the late Judge Conlon of the Essex County Court. The writ issued and a hearing was held. The facts upon which petitioner seeks relief are substantially undisputed.

On March 17, 1947, Charles Kittush, the owner of a dry-goods store on Summer Avenue in Newark, New Jersey, was shot and killed during the course of a robbery. The crime went unsolved until December 17, 1949, when the Newark police obtained information implicating the petitioner, and two others— Armando Corvino and John DeMasi. The information implicating these three was obtained during an investigation of an altercation between Corvino and his wife, in which the wife supplied the leads that resulted in the solution of the murder.

December 17, 1949 was a Saturday. On that day the Orange, New Jersey police, acting presumably at the request of the Newark police, sought to locate petitioner, then about 20 years of age, at his home in Orange. They were told that he was out hunting with his brother. Word was left with petitioner's parents that he was to report to the Orange police headquarters at 9 a. m. the next day, Sunday, December 18, 1949. Petitioner complied with this re-quest, but before he did so he sought the advice of Frank A. Palmieri, Esq., an attorney and counselor at law of New Jersey, and it was pursuant to Mr. Palmieri's suggestion that petitioner reported to the Orange police. Petitioner's brother and father accompanied him. Petitioner was separated from them, and within half an hour of his arrival at police headquarters in Orange he was taken by Newark detectives to Newark police headquarters. Up to this time neither petitioner nor any members of his family had been informed of the reasons for his detention. Such information was refused petitioner's father and brother by the Orange police, but one of them volunteered the advice that they ought to "get a good lawyer."

At approximately 2 p. m., petitioner's father and brother and Mr. Palmieri arrived at the Newark police station where petitioner was detained. Mr. Palmieri asked to see his client, but his request was not granted. He repeated this request periodically all afternoon and well into the evening and it was not until 9:30 p. m., after petitioner had signed a lengthy and detailed confession, that he and his counsel were permitted to confer. Mr Palmieri was not produced as a witness on the trial of this case, but his affidavit was admitted by stipulation. The contents of his affidavit and the testimony of petitioner's father and brother are at variance with the testimony of the Newark police as to the manner in which petitioner and his counsel were restrained from communicating with each other. According to petitioner's witnesses Palmieri's pleas were met with blunt refusals and remarks such as "We're working on him." The police claim to have been much more decorous. But whether it was done flippantly or courteously, the fact remains that for over seven hours the Newark police formed an insuperable barrier between an accused who wanted to see his counsel, and counsel who wanted to see his client. And it was during these seven hours that the police and an assistant prose-

cutor were able to obtain a detailed confession from petitioner.[1]

█ Following petitioner's arraignment the next day and subsequent indictment for murder, Mr. Palmieri began some lengthy litigation in the New Jersey courts aimed primarily at suppressing use of petitioner's confession and secondarily at securing an inspection of it before trial. These proceedings involved appeals to the New Jersey Superior Court, Appellate Division, State v. Cicenia, 1950, 9 N.J.Super. 135, 75 A.2d 476, and to the New Jersey Supreme Court, State v. Cicenia, 1951, 6 N.J. 296, 78 A.2d 568. The upshot was a holding by the Supreme Court of New Jersey that New Jersey, unlike the federal practice, had no procedure available through which inadmissible evidence could be suppressed before trial. A ruling on the admissibility of the confession secured under the circumstances set forth above could be obtained in New Jersey only at a trial on the merits when introduction of the confession was attempted. The Supreme Court did rule, however, that a trial court had discretionary power to permit inspection of a confession by an accused and his counsel.[2]

█ Subsequently petitioner was given an opportunity to plead non vult to a charge of first degree murder pursuant to the provisions of N.J.Rev.Stat. 2:138–3 (now N.J.Rev.Stat. 2A:113–3, N.J.S.A.). Under this statute acceptance of such a plea is discretionary with the trial court, State v. Martin, E. & A.

1919, 92 N.J.L. 436, 106 A. 385, 17 A.L.R. 1090, and the maximum sentence that may be imposed after such a plea is life imprisonment. Petitioner offered a plea of non vult. The Essex County Court accepted it upon recommendation of both petitioner's counsel and the assistant prosecutor in charge of the case, and on April 18, 1951 petitioner and his two co-defendants were sentenced to life imprisonment.

Petitioner began this collateral attack on his conviction with a petition for a writ of habeas corpus addressed to the Essex County Court. This was heard and denied on January 21, 1955 by the late Judge Conlon. The Superior Court of New Jersey, Appellate Division affirmed that judgment in a one-page unreported opinion. The Supreme Court of New Jersey denied leave to appeal in forma pauperis. A petition for a writ of certiorari to the United States Supreme Court was denied, Cicenia v. State of New Jersey, 350 U.S. 925, 76 S.Ct. 215. Petitioner thus exhausted his state remedies as required by 28 U.S.C. § 2254 and Darr v. Burford, 1950, 339 U.S. 200, 70 S.Ct. 587, 94 L.Ed. 761, and thereafter filed this application for a writ of habeas corpus.

The theory relied on is that since the plea of non vult to the indictment for murder was motivated by the presence of the confession, and since the confession was taken in derogation of petitioner's right under the Fourteenth Amendment to communicate with his counsel, petitioner is being unconstitutionally restrained of his liberty.[3]

1. Petitioner also attempted to prove that the confession was wrung from him by physical abuse at the hands of the police. His proof consisted solely of his own testimony, against which must be placed the unequivocal assertions of three Newark detectives and an assistant prosecutor that there was absolutely no violence or coercion of any kind. It must be concluded that petitioner failed to carry his burden of proving that the confession was involuntary.

2. This discretion can only be exercised upon a showing of good cause by the ac-

cused. State v. Tune, 1953, 13 N.J. 203, 98 A.2d 881; Application of Tune, 3 Cir., 1956, 230 F.2d 883, certiorari denied Tune v. State of New Jersey, 351 U.S. 987, 76 S.Ct. 1057.

3. Petitioner had the benefit of appointed counsel at his habeas corpus hearing before the Essex County Court. The subsequent appeals to the New Jersey appellate courts and the petition for certiorari to the United States Supreme Court were taken pro se. The petition for the writ was lodged here by petitioner pro se. His present counsel was ap-

It must first be decided whether the merits of petitioner's claim can now be met. The Essex County Court held that the claim of denial of counsel and illegality in procuring the confession need not be reached because any rights petitioner had under these contentions were waived by the plea of non vult. It has been held in New Jersey that a judgment of conviction following a plea of guilty is not subject to attack on the ground that there lurks in the background an illegally procured confession. In .re Domako, App.Div.1952, 20 N.J. Super. 314, 90 A.2d 30. However, in affirming the judgment of the Essex County Court the Appellate Division, in its unreported opinion, held flatly that "(T)he denial of permission to confer with counsel prior to arraignment has been held to deprive the accused of no constitutional right" and cited as authority State v. Grillo, 1952, 11 N.J. 173, 93 A.2d 328. See also State v. Murphy, E. & A. 1915, 87 N.J.L. 515, 94 A. 640, which holds that an accused under the New Jersey Constitution has a right to counsel for his *defense* only and that this contemplates judicial proceedings and the right to access to counsel to prepare for them. The right does not exist at any earlier time. This is apparently the law of New Jersey today. State v. Grillo, supra. At any event, it appears that the Appellate Division decided petitioner's claim of denial of right to counsel on the merits thus holding, inferentially at least, that there is no taint of illegality touching the confession. Since the state courts reached the merits, the merits are reachable here. Brown v. Allen, 1953, 344 U.S. 443, 486, 73 S.Ct. 397, 422, 97 L.Ed. 469:

> " * * * this Court will review state habeas corpus proceedings even though no appeal was taken, if the state treated habeas corpus as permissible. Federal habeas corpus is available following our refusal to review such state habeas corpus proceedings. * * * *"

There is another reason why the substance of petitioner's allegations must be considered. The Supreme Court has recently said that "a conviction following trial or on a plea of guilty based on a confession extorted by violence or by mental coercion is invalid under the Federal Due Process Clause * * *." Com. of Pennsylvania ex rel. Herman v. Claudy, 1956, 350 U.S. 116, 118, 76 S.Ct. 223, 224. Compare Townsend v. Burke, 1948, 334 U.S. 736, 738, 68 S.Ct. 1252, 92 L.Ed. 1690. There can be little doubt that petitioner's plea of non vult was based on the confession, for at the time of sentencing the assistant prosecutor urged as a reason for acceptance of the plea the lack of evidence other than the confessions of the three accused. Petitioner was unable to obtain a ruling on the legality of his confession unless he was willing to go to trial on the merits and risk a possible death sentence. This puts a harsh burden of choice on a defendant in such a situation, a burden that is not present in other than capital causes since it is only in the latter that New Jersey permits the imposition of a harsher penalty after jury verdict of guilty than it does upon plea of non vult. It is much easier to find ·a waiver of rights under a claim of illegal procurement of a confession in a non-capital case where the law punishes with ·equal severity every convicted person ·whether that conviction is by verdict after trial ·or follows the accused's admission in open court, see United States ex rel. Trowbridge v. Com. of Pa., D.C.W.D.Pa.1952, 112 F.Supp. 356, affirmed 3 Cir., 1953, 204 F.2d 689, than it is to find such waiver in capital cases where under law like that of New Jersey the difference between pleading non vult and fighting ·out the merits is the difference between insuring life and risking death. To put it another way, when an accused

---

pointed for him by this court and presented petitioner's case in a most able manner by filing an excellent brief as well

as hotly contesting the merits of petitioner's case at the hearing.

voluntarily pleads guilty or non vult after rendering a confession to the police there is very little ground left upon which to postulate a factual finding that the plea was "based" on the confession if the law affords no extraordinary encouragement to make the plea rather than to stand trial on the merits. But in capital cases in New Jersey there is an extraordinary encouragement to the accused to offer a plea of non vult if the court will accept it, and that encouragement is, of course, the death sentence that will result if on the trial the jury fails to recommend the lesser punishment of life imprisonment. This circumstance leaves open the door to finding that the plea is "based" on the confession and where that is the case the validity of the conviction and the underlying confession may be adjudicated on habeas corpus. Herman v. Claudy, supra. Although in that case the language was directed specifically to confessions "extorted by violence or mental coercion", it is obvious that the principle applies equally to confessions constitutionally assailable on other grounds.

When the lowest court in the federal judicial system reconsiders legal claims that have been presented to the highest court of a state and there turned down it is performing its most delicate judicial task. Federal judges do not welcome this kind of business. Despite these considerations one cannot help stating that a personal reaction to the manner in which the police chose to extract petitioner's confession from him is a highly adverse one. Not only was petitioner deprived of a cherished American right—the right to see a lawyer—but the dignity of the legal profession itself was demeaned when the police and an assistant prosecutor arbitrarily refused to permit this petitioner's counsel to perform the traditional role of the lawyer in informing an accused of his rights. But these personal notions are not the law.

The only frank discussion of the right of local police to question suspects prior to arraignment and without counsel in the recent pages of the United States Reports is in the concurring opinion of Mr. Justice Jackson in Watts v. State of Indiana, 1949, 338 U.S. 49, 57, 69 S.Ct. 1347, 1357, 1359, 93 L.Ed. 1801. He there points out the dilemma this problem poses for a free society, and somewhat unenthusiastically states his view in favor of such police questioning in the following language:

"I suppose no one would doubt that our Constitution and Bill of Rights, grounded in revolt against the arbitrary measures of George III and in the philosophy of the French Revolution, represent the maximum restrictions upon the power of organized society over the individual that are compatible with the maintenance of organized society itself. They were so intended and should be so interpreted. It cannot be denied that, even if construed as these provisions traditionally have been, they contain an aggregate of restrictions which seriously limit the power of society to solve such crimes as confront us in these cases. Those restrictions we should not for that reason cast aside, but that is good reason for indulging in no unnecessary expansion of them.

"I doubt very much if they require us to hold that the State may not take into custody and question one suspected reasonably of an unwitnessed murder. If it does, the people of this country must discipline themselves to seeing their police stand by helplessly while those suspected of murder prowl about unmolested. Is it a necessary price to pay for the fairness which we know as 'due process of law'? And if not a necessary one, should it be demanded by this Court? I do not know the ultimate answer to these questions; but, for the present, I should not increase the handicap on society." 338 U.S. at pages 61–62, 69 S.Ct. at page 1359.

The Court has never held that lack of counsel at the time of police interrogation of itself invalidates a confession. It has, however, mentioned this in connection with other circumstances adding up to a factual complex rendering a confession invalid. See Watts v. State of Indiana, supra; Turner v. Com. of Pennsylvania, 1949, 338 U.S. 62, 69 S.Ct. 1352, 93 L.Ed. 1810; Harris v. State of South Carolina, 1949, 338 U.S. 68, 69 S.Ct. 1354, 93 L.Ed. 1815; Haley v. State of Ohio, 1948, 332 U.S. 596, 68 S.Ct. 302, 92 L.Ed. 224. But it cannot be doubted that confessions obtained by police interrogation prior to arraignment and the access to counsel that is provided at that time are on the borderline of due process. There are those who would outlaw such questioning altogether. Gallegos v. State of Nebraska, 1951, 342 U.S. 55, 73, 72 S.Ct. 141, 96 L.Ed. 86 (dissenting opinion); Stroble v. State of California, 1952, 343 U.S. 181, 203, 72 S.Ct. 599, 96 L.Ed. 872 (dissenting opinion).

In the Stroble case, supra, an attempt was made to put the identical issue raised here before the Supreme Court.

"The questioning of petitioner in the District Attorney's office lasted approximately two hours. About 45 minutes after petitioner had begun his confession, an attorney, Mr. Gray, called at the waiting room of the District Attorney's office and asked for the assistants handling the case. Upon being advised that they were busy he then asked for the District Attorney. Upon being told that the District Attorney was also in conference and could not be disturbed, Mr. Gray asked to see petitioner. It is uncontradicted that at that point Mr. Gray stated to a police department inspector who was present in the waiting room that he 'just wanted to hear from [petitioner's] lips whether or not' petitioner had committed the murder, 'so that [he] could report back' to petitioner's son-in-law. Mr. Gray was denied admission to the room in which petitioner was being questioned, but talked to an assistant district attorney after the confession had been completed. Mr. Gray was permitted to see petitioner that evening. Mr. Gray did not represent petitioner during the trial, but on the motion for new trial was substituted, at petitioner's request, for the Public Defender." Stroble v. California, 343 U.S. at pages 187–188, 72 S.Ct. at page 602.

In ruling upon the contention that it was a denial of due process to refuse access to the accused by the lawyer sent by the accused's son-in-law the Court said:

"As to the refusal of the prosecutors to admit counsel during their interrogation of petitioner, counsel stated that he had come to the District Attorney's office at the request of petitioner's son-in-law merely to inquire of petitioner as to his guilt. At no point did petitioner himself ask for counsel. In light of these facts, the District Attorney's refusal to interrupt the examination of petitioner, which had been proceeding for almost an hour, so that counsel could make inquiry for petitioner's son-in-law, does not constitute a deprivation of due process, either independently or in conjunction with all other circumstances in this case. *While district attorneys should always honor a request of counsel for an interview with a client,* upon the record before us there is no showing of prejudice." 343 U.S. at pages 197–198, 72 S.Ct. at page 607 (emphasis added).

The italicized portion of the excerpt quoted above is advanced as being indicative of the attitude of the Supreme Court on this problem. But it is difficult to believe, in view of the well-known reluctance of that Court to decide constitutional issues where there is no necessity for it, that the Court meant to rule upon a point of constitutional law and in the same sentence find adequate ground for avoiding the ruling. The language re-

**104**

lied on by petitioner must be taken as a statement of preference for what is undoubtedly the more civilized practice and not as a statement of constitutional law.

This result is reached without enthusiasm. Perhaps it may be partially justified by practical considerations:

> "It does not militate against respect for the deeply rooted systems of criminal justice in the States that such an abrupt innovation as recognition of the constitutional claim here made implies, would furnish opportunities hitherto uncontemplated for opening wide the prison doors of the land." Foster v. People of State of Illinois, 1947, 332 U.S. 134, 139, 67 S.Ct. 1716, 1719, 91 L.Ed. 1955.

The writ will be discharged and the petitioner remanded to custody upon the submission of an appropriate order to that effect by the respondent consented to as to form only by counsel for the petitioner.