CICENIA *v.* LAGAY, SUPERINTENDENT, NEW JERSEY STATE PRISON FARM.

No. 177.   Argued April 2, 1958.—
Decided June 30, 1958.

*Dickinson R. Debevoise* argued the cause and filed a brief for petitioner.

*C. William Caruso* argued the cause for respondent. With him on the brief were *Grover C. Richman, Jr.,* Attorney General of New Jersey, and *Charles V. Webb, Jr.*

Mr. Justice Harlan delivered the opinion of the Court.

We are asked to reverse under the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States a state conviction which was entered upon a plea of *non vult* to an indictment for first degree murder.

In the evening of March 17, 1947, Charles Kittuah, the owner of a small dry goods store in Newark, New Jersey, was shot and killed during the course of a robbery. The crime remained unsolved until December 17, 1949, when the Newark police obtained information implicating the petitioner and two others, Armando Corvino and John DeMasi. Petitioner lived with his parents at Orange, New Jersey. Apparently acting at the request of the Newark police, the Orange police sought to locate petitioner at his home. When told that he was out, the police left word that he was to report at the Orange police headquarters the following day. Petitioner sought the advice of Frank A. Palmieri, a lawyer, who advised him to report as requested. Petitioner did so, accompanied by his father and brother. Upon arrival at the Orange police station at 9 a. m. on December 18, petitioner was separated from the others and taken by detectives to the Newark police headquarters. At approximately 2 p. m. the same day petitioner's father, brother and Mr. Palmieri, the lawyer, arrived at the Newark station. Mr. Palmieri immediately asked to see petitioner, but this request was refused by the police. He repeated this request at intervals throughout the afternoon and well into the evening, but without success. During this period petitioner, who was being questioned intermittently by the police, asked to see his lawyer. These requests were also denied. Lawyer and client were not permitted to confer until 9:30 p. m., by which time petitioner had made and signed a written confession to the murder of Kittuah. The confession is not in the record.

Petitioner was arraigned the next day, December 19, and subsequently indicted, along with Corvino and DeMasi, both of whom had also confessed to the murder. Thereafter, petitioner moved in the Essex County Court for an order requiring the State to produce for inspection before trial his confession and the confessions of his co-defendants and, alternatively, for an order suppressing his confession on the ground that it had been illegally obtained. The County Court denied the motion. The Superior Court of New Jersey dismissed the appeal, 9 N. J. Super. 135, 75 A. 2d 476, and the Supreme Court of New Jersey affirmed the dismissal, with modifications. 6 N. J. 296, 78 A. 2d 568. The State Supreme Court held that New Jersey had no procedure like that under Rule 41 (e) of the Federal Rules of Criminal Procedure by which inadmissible evidence could be suppressed before trial; that under New Jersey law criminal defendants did not have an absolute right to inspect their confessions in advance of trial; and that the trial judge in this instance did not abuse his discretion in disallowing such an inspection.

Following his failure to suppress or obtain inspection of his confession, petitioner, on the advice of his attorney, offered to plead *non vult* to the indictment. In New Jersey such a plea is subject to discretionary acceptance by the trial court, *State* v. *Martin,* 92 N. J. L. 436, 106 A. 385, and carries a maximum sentence of life imprisonment. Petitioner's plea was accepted by the trial court, as were the similar pleas of Corvino and DeMasi, whose cases are not before us. Petitioner and his two co-defendants were thereupon sentenced to life imprisonment at hard labor.

Thereafter petitioner commenced habeas corpus proceedings in the New Jersey courts, alleging that his plea of *non vult* was actuated by the existence of the confession, and that the conviction entered upon such plea was

vitiated under both the State and Federal Constitutions because the confession was coerced and because it had been taken in derogation of his right to the assistance of counsel. The County Court, the Superior Court, and the Supreme Court of New Jersey in turn denied relief,[1] and this Court denied certiorari. 350 U. S. 925. Petitioner then commenced in the District Court for New Jersey the federal habeas corpus proceeding before us, attacking his conviction on the grounds stated above. The District Court discharged the writ, holding that petitioner had failed to establish the involuntariness of the confession and that the State's refusal to permit petitioner to communicate with counsel during the police inquiry did not deprive him of due process. 148 F. Supp. 98. The Court of Appeals affirmed, 240 F. 2d 844, and we granted certiorari to consider the constitutional questions presented. 354 U. S. 908.[2]

---

[1] The opinions of the County Court and Superior Court are not reported. The State Supreme Court wrote no opinion.

[2] Although the State does not contend that the case is not properly here, we have nevertheless felt obliged to consider our jurisdiction in view of the following circumstances: New Jersey has a rule that a defendant who pleads guilty waives the right to attack a confession on which such plea is based. See *In re Domako,* 20 N. J. Super. 314, 90 A. 2d, 30, aff'd, 11 N. J. 591, 95 A. 2d 505. Following that rule, the Essex County Court held that petitioner could not attack his conviction on habeas corpus. On appeal the Superior Court did not advert to that question, but affirmed the County Court on the ground that under New Jersey law petitioner had no constitutional right to counsel prior to arraignment. See *State* v. *Grillo,* 11 N. J. 173, 93 A. 2d 328. The State Supreme Court gave no reasons for denying leave to appeal. Since the Superior Court had dealt with petitioner's constitutional claims on the merits, the two lower federal courts decided that they had the power to consider them. Cf. *Brown* v. *Allen,* 344 U. S. 443, 486; *Hawk* v. *Olson,* 326 U. S. 271, 278. We agree that jurisdiction exists. In the absence of a definitive New Jersey ruling that the *Domako* waiver principle applies to a plea of *non vult,* we shall not assume that the New Jersey Supreme Court's

An independent examination of the record satisfies us that the District Court was justified in concluding that petitioner failed to substantiate the charge that his confession was coerced. Petitioner does not now contend to the contrary. He continues to contend, however, that under the Fourteenth Amendment his confession, even though voluntary, was nevertheless vitiated by police refusal to permit him to confer with counsel during his detention at Newark police headquarters, and that because his plea of *non vult* was based on the confession, the conviction must fall as well.[3]

The contention that petitioner had a constitutional right to confer with counsel is disposed of by *Crooker* v. *California, ante,* p. 433, decided today. There we held that California's failure to honor Crooker's request during a period of police interrogation to consult with a lawyer, as yet unretained, did not violate the Fourteenth Amendment. Because the present case, in which petitioner was denied an opportunity to confer with the lawyer whom he had already retained, sharply points up the constitutional issue involved, some additional observations are in order.

We share the strong distaste expressed by the two lower courts over the episode disclosed by this record. Cf. *Stroble* v. *California,* 343 U. S. 181, 197–198. Were this a federal prosecution we would have little difficulty in

decision denying leave to appeal was based on that nonfederal ground. Cf. *Stembridge* v. *Georgia,* 343 U. S. 541. Our conclusion is strengthened by the fact that the Superior Court did not rely on the *Domako* rule, and by the absence of any challenge to our jurisdiction by the State.

[3] Since we conclude that the police refusal to allow petitioner to consult with his lawyer did not violate the Fourteenth Amendment, we need not consider the State's further contention that petitioner was not denied due process because the confession was never "used" against him, he having pleaded *non vult* to the indictment. But cf. *Herman* v. *Claudy,* 350 U. S. 116.

dealing with what occurred under our general supervisory power over the administration of justice in the federal courts. See *McNabb* v. *United States,* 318 U. S. 332. But to hold that what happened here violated the Constitution of the United States is quite another matter.

The difficulties inherent in the problem require no extensive elaboration. Cf. *Watts* v. *Indiana,* 338 U. S. 49, 57–62 (opinion of Jackson, J.). On the one hand, it is indisputable that the right to counsel in criminal cases has a high place in our scheme of procedural safeguards. On the other hand, it can hardly be denied that adoption of petitioner's position would constrict state police activities in a manner that in many instances might impair their ability to solve difficult cases. A satisfactory formula for reconciling these competing concerns is not to be found in any broad pronouncement that one must yield to the other in all instances. Instead, as we point out in *Crooker* v. *California, supra,* this Court, in judging whether state prosecutions meet the requirements of due process, has sought to achieve a proper accommodation by considering a defendant's lack of counsel one pertinent element in determining from all the circumstances whether a conviction was attended by fundamental unfairness. See *House* v. *Mayo,* 324 U. S. 42, 45–46; *Payne* v. *Arkansas,* 356 U. S. 560, 567.

In contrast, petitioner would have us hold that any state denial of a defendant's request to confer with counsel during police questioning violates due process, irrespective of the particular circumstances involved. Such a holding, in its ultimate reach, would mean that state police could not interrogate a suspect before giving him an opportunity to secure counsel. Even in federal prosecutions this Court has refrained from laying down any such inflexible rule. See *McNabb* v. *United States, supra; Mallory* v. *United States,* 354 U. S. 449. Still less should we impose this standard on each of the 48 States as a mat-

ter of constitutional compulsion.[4]  It is well known that law-enforcement problems vary widely from State to State, as well as among different communities within the same State.  This Court has often recognized that it is of the "very essence of our federalism that the States should have the widest latitude in the administration of their own systems of criminal justice."  *Hoag* v. *New Jersey,* 356 U. S. 464, 468.  See *Maxwell* v. *Dow,* 176 U. S. 581; *Twining* v. *New Jersey,* 211 U. S. 78.  The broad rule sought here and in *Crooker* would require us to apply the Fourteenth Amendment in a manner which would be foreign both to the spirit in which it was conceived and the way in which it has been implemented by this Court.

Petitioner's remaining constitutional contention can be disposed of briefly.  He argues that he was deprived of due process because New Jersey required him to plead to the indictment for murder without the opportunity to inspect his confession.

The Fourteenth Amendment does not reach so far. As stated by the Supreme Court of New Jersey in the earlier proceedings in this case, 6 N. J. 296, at 299–301, 78 A. 2d 568, at 570–571, the rule in that State is that the trial judge has discretion whether or not to allow inspection before trial.  This is consistent with the practice in many other jurisdictions.  See, *e. g., State* v. *Haas,* 188 Md. 63, 51 A. 2d 647; *People* v. *Skoyec,* 183 Misc. 764, 50 N. Y. S. 2d 438; *State* v. *Clark,* 21 Wash. 2d 774, 153 P. 2d 297.  In *Leland* v. *Oregon,* 343 U. S. 790, 801–802,

---

[4] New Jersey is not alone in its rule that an accused has no right to consult with counsel during the period between arrest and arraignment.  See *State* v. *Rogers,* 143 Conn. 167, 120 A. 2d 409; *Utah* v. *Sullivan,* 227 F. 2d 511; *People* v. *Kelly,* 404 Ill. 281, 89 N. E. 2d 27.  Most States have not had occasion to rule on the issue before us, and it is generally quite unclear in state law when the right to have counsel begins.  See Beaney, The Right to Counsel in American Courts, 127–128; 3 A. L. R. 2d 1003, 1032 *et seq.*

this Court held that in the absence of a showing of prejudice to the defendant it was not a violation of due process for a State to deny counsel an opportunity before trial to inspect his client's confession. It is true that in *Leland* the confession was made available to the defense at the trial several days before its case was rested, whereas here petitioner pleaded *non vult* without an opportunity to see the confession. We think that the principle of that case is nonetheless applicable. As was said in *Leland* (343 U. S., at 801), although it may be the "better practice" for the prosecution to comply with a request for inspection, we cannot say that the discretionary refusal of the trial judge to permit inspection in this case offended the Fourteenth Amendment. Cf. *Application of Tune,* 230 F. 2d 883, 890–892.

*Affirmed.*

MR. JUSTICE BRENNAN took no part in the consideration or decision of this case.

MR. JUSTICE DOUGLAS, with whom THE CHIEF JUSTICE and MR. JUSTICE BLACK concur, dissenting.

Petitioner, pursuant to a request left by the police at his home on Saturday, December 17, appeared at headquarters in Orange, New Jersey, at 9 a. m. on the 18th. He did so on the advice of his lawyer, Frank A. Palmieri. Petitioner's brother and father accompanied him on this visit but were separated from him on arrival at the headquarters. Shortly thereafter petitioner was taken to Newark where he was interrogated by the police until 9:30 p. m. when he confessed. Between 2 p. m. and 9:30 p. m. Mr. Palmieri asked over and again to see his client; but his requests were not granted. On this phase of the case the District Court said:

"Mr. Palmieri was not produced as a witness on the trial of this case, but his affidavit was admitted by

stipulation. The contents of his affidavit and the testimony of petitioner's father and brother are at variance with the testimony of the Newark police as to the manner in which petitioner and his counsel were restrained from communicating with each other. According to petitioner's witnesses Palmieri's pleas were met with blunt refusals and remarks such as 'We're working on him.' The police claim to have been much more decorous. But whether it was done flippantly or courteously, the fact remains that for over seven hours the Newark police formed an insuperable barrier between an accused who wanted to see his counsel, and counsel who wanted to see his client. And it was during these seven hours that the police and an assistant prosecutor were able to obtain a detailed confession from petitioner." 148 F. Supp. 98, 99–100.

The District Court reached "without enthusiasm" the conclusion that petitioner's constitutional rights had not been impaired. *Id.,* at 104. The Court of Appeals evinced the same lack of enthusiasm for the result. 240 F. 2d 844. Both lower courts felt that any correction of this unjust result should come from us. I regret that we have not taken this case, and the companion cases, as the occasion to bring our decisions into tune with the constitutional requirement for fair criminal proceedings against the citizen. I would reverse the judgment for the reasons stated in my dissent in *Crooker* v. *California, ante,* p. 441.