THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.*
ISRAEL FIGUEROA GONZÁLEZ, Defendant and Appellant.

No. CR-65-500. Decided June 28, 1967.

*Elizabeth A. de Watlington, Edna Abruña Rodríguez, Enrique Miranda Merced, Antonio Andino Elías,* and *Ramón Rivera Valentín* for appellant. *J. B. Fernández Badillo, Solicitor General,* and *Ida Cardona Hernández, Assistant Solicitor General,* for The People.

MR. JUSTICE SANTANA BECERRA delivered the opinion of the Court.

At the age of 16 years and 8 months appellant took the life of a human being, by firing four revolver shots. He was accused of murder in the first degree and convicted of murder in the second degree, carrying of weapons (felony) and possession of weapons (misdemeanor). He was ordered to serve in the penitentiary from 12 to 20 years and from 1 to 4 years, respectively, and one year in jail. On appeal he assigns the following errors:

(1) That the court erred in admitting in evidence defendant's extrajudicial statement;

(2) That the trial against defendant does not comply with the requirements of the due process of law;

(3) That the court acted without jurisdiction in the prosecution for the violation of § 6 of the Weapons Law;

(4) That the judge committed error of law in severely reprehending the witness for the defense, appellant's father, in the presence of the jury, and in sentencing him for contempt; and

(5) That the court erred in denying a motion for new trial.

Appellant maintains that at the time he offered the extrajudicial statement the Juvenile Court had not waived its jurisdiction over him, and that he was not warned that if he made a statement it could be used against him in the event the court waived its jurisdiction in his case. He also maintains that the decision in *Escobedo v. Illinois*, 378 U.S. 478, should be applied, according to the construction of this Court in *Rivera Escuté v. Delgado, Warden*, 92 P.R.R. 746 (1965).

■ The statement was given on October 21, 1962. The trial was held on June 26 and 27, 1963. On said dates appellant did not have, under the state of law in force, the constitutional guarantee that his extrajudicial statement be excluded from the proceeding because when he made it he did not have assistance of counsel, nor was he warned of his right to have legal assistance there, nor was an attorney assigned to him. *Rivera Escuté v. Delgado, Warden, supra*; *People v. Adorno Lorenzana*, 93 P.R.R. 768 (1966). On the dates on which the statement was given and the trial was held, the present Rules 4, 22(b) and 23(a) and (b) of the Rules of Criminal Procedure were not in force either.

■■ As to the other requirement of warning, there is nothing in Act No. 97 of June 23, 1955, concerning minors which requires that appellant be warned of the fact that the Juvenile Court could waive its jurisdiction as a requisite to the validity of the extrajudicial statement for the purpose of its exclusion at the trial. Actually, subsequent to the decision of the Supreme Court of the United States in the case of a minor *In Re Gault*, 387 U.S. 1, decided May 15,

1967, insofar as basic constitutional guarantees are concerned, there should be no differences between treatment of a minor and of an adult.

■ Irrespective of the applicable rule in relation to the cases of *Rivera Escuté* and *Adorno Lorenzana, supra,* arising from *Escobedo* v. *Illinois, supra,* appellant was protected at all times by the constitutional guarantee of not incriminating himself, and as a sequel thereof, of being warned of said guarantee.

Appellant's sworn statement taken by the prosecuting attorney appears in an official printed form which says: "Witness' Sworn Statement:_____ (name)_____
At _____ , on _____ _____ , 19___;
I,____ (name of deponent)___ , born in._____
resident of _____, _____ years old, appear before the prosecuting attorney and subsequent to the legal warnings which have been made to me, I voluntarily declare under oath:" (the rest of the form is in blank). After the statement of the facts recited by appellant in a narrative form, an interrogatory of questions and answers follows which ends like this:

"Q. Why were you carrying the revolver yesterday?
"A. I have been carrying the revolver for two days.
"Q. Why have you been carrying that revolver for two days?
"A. For defense. To defend myself from being bumped off by anybody, or rather, not anybody, but from being bumped off by them.
"Q. Is everything you have said true?
"A. Yes, sir.
"Q. Do you declare it voluntarily?
"A. Yes, sir.
"Q. I explained to you that you had the right not to testify if you did not want to.
"A. Yes, sir.
"Q. That if you testified, anything you said could be used against you in any case?

"A. Yes, sir.

"Q. Has anybody threatened you to testify?

"A. No, sir.

"Q. Then, I must understand that everything you have testified has been of your own free will?

"A. Yes, sir.

"Q. Do you regret what you did?

"A. No, sir.

"Q. Up to what grade did you go to school?

"A. I studied the fourth, fifth, sixth, and seventh grades, I mean, I took the seventh grade examinations and passed them."

■■ The fact that in the printed form used to make the sworn statement there appears the phrase "subsequent to the legal warnings" does not constitute compliance with the constitutional provision of warning against self-incrimination. It does not state what warnings were made, nor can it serve as a basis for an intelligent waiver of such right. A final statement, after the facts have been testified, that the person under arrest has been warned of his right in that sense, is not the best manner either. Although appellant accepts it was so done, it does not affirmatively appear at what time the prosecuting attorney could have made the warnings. To comply strictly with the constitutional protection, such warning should precede every sworn statement, and it should thus specifically appear from the text thereof, if it were written.

■ On the other hand, it does appear from the sworn statement, although not in the best manner, that appellant was warned of his right not to incriminate himself, and that what he testified could be used against him in any case. This, in addition to the fact that from an examination of the record we are fully convinced that that was a voluntary statement made without coercion of any sort, to which we shall refer later on, does not render it fatally inadmissible in the light of said constitutional guarantee.

It is alleged that as a result of the admission of the extrajudicial statement there was a conviction without the due process of law. In the second case of *Rivera Escuté*, 80 P.R.R. 800, although we held that at that time there did not exist the constitutional right to assistance of counsel during the investigatory stage of the case, yet, we said, following the rule in *Crooker* v. *California*, 357 U.S. 433 and *Cicenia* v. *La Gay*, 357 U.S. 504, that defendant's lack of counsel at this stage could be a pertinent element to be considered together with other attendant circumstances, in determining whether such lack of counsel could have infected his subsequent trial with an absence of that fundamental fairness essential to the very concept of justice, so that the judgment of conviction might have been the fruit of a situation repugnant to the basic principles of liberty and justice essential to the concept of a fair and impartial trial. (Pp. 823–824.)

With this rule in mind we have examined the record. It unquestionably appears therefrom, in the incident on the voluntariness of the sworn statement, that subsequent to the incident which occurred in the afternoon of October 20, 1962, appellant hid himself. The prosecuting attorney communicated with his father, demanding his cooperation to locate him. The next day the father informed the prosecuting attorney by telephone that appellant was at his uncle's house. Accompanied by his father, the police went to the place, and the prosecuting attorney went to the General Police Headquarters to wait for them there. When appellant came the prosecuting attorney talked with him for about fifteen minutes in his father's presence, in the air-conditioned office of one of the officers. Then, they passed to another office, this time without his father, where immediately the statement was taken in writing. Appellant did not suffer any detention whatsoever prior to testifying in the hands of the police authorities. In his own statement he says that

he went to Caguas and from there he sent word to his father to go for him to surrender himself.

What occurred in this case in relation to appellant's statement is far from what occurred to the minor in *Haley* v. *Ohio*, 332 U.S. 596. And the proceedings to treat the minor appellant as an adult in the case at bar are quite different from the proceedings used and rejected in *Kent* v. *United States*, 383 U.S. 541.

In addition to the foregoing, the experience of the arrest and the prosecuting attorney's interrogatory was not new for appellant. Since he was twelve years old he had been frequently committing a series of offenses which, had they been committed by an adult, would have been felonies.

The admission of the extrajudicial statement in appellant's proceeding was not on the margin of the due process of law, nor of a fair and impartial trial. The first, second, and fifth errors assigned are thus disposed of, since the petition for new trial was based on the admission of the statement.

In support of the third error appellant maintains that the trial court lacked jurisdiction to prosecute him and convict him of the violation of the Weapons Law (misdemeanor). We are of the opinion that it had jurisdiction.

■ Section 4 of the Act of the Juvenile Court as originally approved in 1955 provided that when a child over 16 years and under 18 years of age was charged with the commission or omission of an act which would constitute a *felony* if committed by an adult, the judge could waive jurisdiction after concluding that to take cognizance thereof would be at cross-purpose with the welfare of the child or of the community, and could order a change of venue for the case to be dealt with as that of an adult. This provision was in force on February 12, 1963, date on which the Juvenile Court waived its authority or jurisdiction over this case. Said § 4 authorizes the waiver of jurisdiction of the

court by reason of the act committed without it being necessary that the minor has been previously under its authority.

In the order of February 12, 1963 the juvenile court waived jurisdiction to entertain specifically these offenses and another one of assault and battery. Aside therefrom, § 3 of the Act provides that the court shall retain its *authority* over any child covered by its provisions until he attains 21 years of age "unless said court shall, upon order to that effect, waive its authority over the minor after reaching 16 years and before attaining 21 years of age . . . ."

 Appellant was already under the authority of the juvenile court. Having considered both sections and the court not having expressly waived its jurisdiction as to the misdemeanors comprised in its order, it cannot be said that the Superior Court lacked jurisdiction to prosecute appellant for the misdemeanor of possession of weapons. Furthermore, it may be noted that although it is true that appellant was accused of the violation of § 6 of the Weapons Law—Act No. 17 of January 19, 1951—as a misdemeanor—reading said section together with § 17 of the same statute, appellant had actually committed a felony because he had used the weapon he possessed without a license in the commission of a murder.[1]

---

[1] There also exists legislative history which reaffirms the view that the court may waive its authority in the misdemeanor. See Act No. 103 of June 29, 1955, which authorizes the Superior Court to grant suspended sentences to a person under 21 years of age in all felony cases, except in cases of first-degree murder; Act No. 57 of June 16, 1956, which amends § 2 of Act No. 259 of 1946 authorizing the Superior Court for the first time to suspend the effects of the sentence entered in all cases of *misdemeanor* arising from the same facts of the felony; Act No. 58 of June 19, 1959, which amends § 2 of Act No. 259 of 1946 to grant the Superior Court jurisdiction or original competency to entertain cases of *misdemeanor* arising from the same facts or transactions of the cases of felony; and Act No. 94 of June 26, 1964, which, upon amending § 4 of Act No. 97 of 1955, did not limit the waiver of the Juvenile Court to the felony case.

■ After the waiver of jurisdiction as to felonies, allowing appellant to be treated as an adult, under the philosophy which governs the juvenile court no purpose was attained by continuing to consider appellant as a child, for the purposes of the misdemeanor.

■ In relation to the fourth error, the incident should not have occurred. The witness, appellant's father, was testifying under quite a nervous condition. At the beginning of his testimony the judge warned him not to testify about anything which occurred after October 20, date on which the death occurred. The judge explained the reasons in the presence of the jury. After quite a prolonged, exciting and repeating interrogatory, including the judge's interrogatory —the judges are authorized to examine reasonably and wisely, but in so doing they should not intimate before the jury that they do it because the parties are trying to conceal facts or the truth—the witness was asked whether he knew the victim's father and his brother and he answered that of course, since they had crucified him with bullets. He did not say when. The judge struck hard with the gavel and admonished the witness for contempt of court, saying that later he would dispose of him.[2]

■ Although we do not believe that the witness was the only one guilty, the incident was not of such seriousness as to render the trial unfair and impartial. The death was caused in broad daylight, in a public place, and in the presence of several persons. The evidence for the prosecution was offered by eye-witnesses who saw appellant fire at the victim, for whatever reasons, without there being any struggle between them. The fourth error does not warrant the reversal either.

For the reasons stated the judgments of conviction will be affirmed.

---

[2] In the absence of the jury he punished him for contempt.

Mr. Chief Justice Negrón Fernández did not participate herein.

Mr. Justice Blanco Lugo concurs in the result.

