The majority opinion finds no support in any decision of our Supreme Court of Errors or the Supreme Court of the United States. The proposition posed has been twice presented to and twice rejected by the highest tribunal that may pass on infringement of constitutional rights violative of due process under the fourteenth amendment. To quote from Crooker v. California,357 U.S. 433, 440: "Petitioner, however, contends that a different rule should determine whether there has been a violation of right to counsel. He would have every state denial of a request to contact counsel be an infringement of the constitutional right without regard to the circumstances of thecase. In the absence of any confession, plea or waiver — or other event prejudicial to the accused — such a doctrine would create a complete anomaly, since nothing would remain that could be corrected on new trial. Refusal by state authorities of the request to contact counsel necessarily would then be an absolute bar to conviction. On the other hand, where an event has occurred while the accused was without his counsel which fairly promises to adversely affect his chances, the doctrine suggested by petitioner would have a lesser but still devastating effect on enforcement of criminal law, for it would effectively preclude police questioning — fairas well as unfair — until the accused was afforded opportunity to call his attorney. Due process, a concept `less rigid and more fluid than those envisaged in other specific and particular provisions of the Bill of Rights,' Betts v. Brady, 316 U.S. 455,462 (1942), demands no such rule." (Italics intact.) *Page 277 
This holding is reiterated in Cicenia v. Lagay,357 U.S. 504, 509, 510; note, 2 L.Ed.2d 1644, 1646. My colleagues apparently entertain "some doubt on the longevity of Crooker and Cicenia." We must follow the law as it is and not exercise a pretended clairvoyance on what the law may or may not be at some future time. The lone distinction made between those cases and the present one is that the police had already concluded their examination of the accused and he then had an absolute right to have counsel. That is not the law. It is only when such denial is under circumstances that are prejudicial to his defense that such claim may be entertained. That, of course, would present a question of fact for the trier, and cannot be derived from speculation. An appellate tribunal must confine its deliberations and decisions to the record. It may not indulge in an assumption or coloration of facts to suit its own exposition of principles of law. To sustain its conclusion, the majority opinion must rest on facts which were not found by the trial court: "He [the defendant] asked permission to use the telephone to call his lawyer. This request was denied. He later asked permission to call his wife. This request, too, was denied." These are facts simply assumed by the majority; they find no existence in the court's finding.
The finding of the court, to which no error has been assigned and which must be accepted, shows the following, in addition to those facts briefly stated in the majority opinion. The Chevrolet car, which was followed by Trooper Hubbard for a distance of two-tenths of a mile, was weaving from side to side in its lane. Twice it went from the right shoulder (traveling easterly) into the westbound lane. The trooper attempted to stop the car by sounding his horn and siren; he pulled alongside, but the driver ignored the cruiser. The driver of *Page 278 
the Chevrolet, in negotiating a right turn into Old State Road, pulled over into the oncoming lane of traffic. He stopped in the middle of the road after a siren blast. He then got out of his vehicle slowly and "weaved." The defendant was the driver. He smelled of alcohol, his pupils were dilated, his eyes watery and bloodshot, his face flushed, and his gait weaving. He asked the trooper for a "break" in order to walk home and started walking down Old State Road. He was then placed under arrest for operating under the influence of liquor and taken to the Colchester barracks, where Troopers Hubbard and MacDonald gave him sobriety tests. He failed the straight-line test, walking in a weaving fashion; his speech was slurred; his face ruddy and flushed. In attempting the finger-to-nose test, his finger first hit the bridge of his nose and slid down the nose. In pursuance of a state police policy, and because of his intoxication the defendant was placed in a cell, to be kept there for a period of four hours, during which he was denied the use of a telephone. We are not concerned here with a criticism of the policy, nor are we empowered to criticize it. We cannot with propriety express judgment on whether such a policy unduly restricts the freedom of an intoxicated person. Such restraints, based upon the experience of police officers charged with the duty of maintaining order and preserving peace, may well have a salutary effect on the individual and society alike. In cases like this, the police are required in the first instance to deal with people of varying degrees of insobriety. Keeping in custody one who obviously cannot be at large without danger to himself and others is not, in itself, an invasion of any constitutional right. No one can claim absolute freedom to conduct himself adversely to the laws designed to promote orderly and seemly behavior. The detention here *Page 279 
has not been claimed, nor was it found, to be illegal.
The next question is whether the defendant was deprived of any constitutional right by the asserted denial to him of the use of the police telephone. It is not maintained that the police were asked by him and refused to convey any reasonable message in his behalf. There was no duty on the troopers' part to provide the defendant with telephone service. In the light of the other subordinate facts, the simple finding that the defendant was able to use the telephone is meaningless. It is common knowledge that a person on the edge of unconsciousness may be able to handle a telephone. His ability to communicate is something else. Furthermore, there is not a crumb of suggestion that the claimed denial of his use of the telephone in any way impaired his defense. He was represented by competent counsel whom he perhaps engaged when released several hours after his arrest. Even if all the assumptions here made are accepted as true, "no prejudicial effects appear to have resulted from the defendant's lack of counsel." State v. Traub, 150 Conn. 169,185. If he had desired a physician to examine him as to his condition, one would have been called. That is routine state police procedure of which we can take notice unless something contrary is indicated. If he had wanted to undergo a chemical test, it would have been provided at his request. He needed no counsel to avail himself of either of those things; he had only to ask. If, on the other hand, he had reached the stage when he was unable to make that decision for himself, then such an examination of his condition would obviously have been of no help to him in his defense.
My second ground of dissent is that the majority opinion derives no support from the record. The *Page 280 
finding is barren of any such subordinate facts as those on which the opinion is based. These assumptions of fact are literally taken from the defendant's motion to correct, which was denied. An examination of the evidence fails to disclose that they were admitted or undisputed as claimed; therefore, they cannot be added by us to a corrected finding. They are derived solely from the testimony of the accused, which the court could properly disbelieve in view of his other testimony that he was fit to drive, despite the undisputed facts summarized above. Although the assignment of errors challenges the ultimate finding of guilt, this claim apparently has been abandoned; if not, it is obviously without merit. The defendant's main, if not entire, contention is that he was deprived of his constitutional right to counsel of his own choice while he was under detention. The court has not found that deprivation to be a fact. We may not do so without arrogating to ourselves the function of the trial court to pass on the weight and credibility of evidence. We cannot find error in the court's refusal to credit the testimony of the defendant. We cannot, on our part, conjure facts or verbalize fictions in order to construct a sounding board for the rhetoric of high-principled opinions. Philosophical utterance which presupposes abstractions as facts serves no deeper purpose than Euclidian geometry, in which the concept of space is linear and the theorems of which are best exemplified in the adjustment of the carpenter's thumb to the law of gravity. The line that is plumb and the line that is level are plumb and level on a tiny surface of earth; they are not true when applied to the perimeter of the globe.
My third ground for disagreement is that the question of constitutional law urged on us is being presented here for the first time. No exception was taken to any ruling; there is not one word in the *Page 281 
transcript of evidence, the finding of facts, the motion to correct, or the assignment of errors that raises the constitutional question now evocated in the defendant's brief. It may seem tautological to say that no error can be committed by a trial court on a question of law on which it had no opportunity to commit error. The majority appear to acknowledge that this question, baldly stated in the opinion, is a new one not appearing in the record of the case, and that its decision rests not so much on a finding of error as on the expectation that a collateral issue now raised by the defendant should receive our original consideration. The general rule, to which this case affords no exception, is that an issue so grave as one involving a constitutional question must be raised as early in a trial as orderly procedure will allow under the circumstances of a given case, and must thereafter be kept alive by appropriate steps; otherwise it will be considered waived. State v. Van Keegan, 142 Conn. 229, 236;Kenmike Theatre, Inc. v. Moving Picture Operators,139 Conn. 95, 100; Grasso v. Frattolillo, 111 Conn. 209,214; Rindge v. Holbrook, 111 Conn. 72, 75;DeFlumeri v. Sunderland, 109 Conn. 583, 588. And the rule is firmly established that constitutional questions, even when properly raised, are to be decided only when necessary for a determination of the case.
The amended finding, filed at our instance after the record had been completed, states that the issue of deprivation of assistance of counsel, through the operation of the state police policy noted above, "was raised by defendant's counsel in his reargument at the conclusion of the case." There is no such report in the certified transcript filed in this case; therefore we can assume that the issue of constitutionality was not presented during the trial. If the question was raised by way of colloquy, or *Page 282 
after sentence, it certainly lacked the seriousness of purpose or precision of statement necessary in order that further attention could be directed to it — as by opening the judgment and a further hearing. This was not done; and the wholly unrecorded and vague claim, if made at all, furnished no basis for a ruling to which exception could have been taken and which then, on appeal, could have been assigned as error.
Finally, there is nothing in our substantive law which sustains the action being taken. The authorities relied on, by resort to periphrasis, do not appear to be in point. No case has been cited in support of the proposition stated. The decisions which touch upon the question, however obliquely, do so in connection with police interrogations as bearing on the voluntariness of confessions; and they concern only felony cases. The quotation from Swift has reference principally to the old English procedure, never adopted here, under which an accused could have counsel (for a limited purpose) but could not offer evidence. Chandler v. Fretag,348 U.S. 3, 9, has its counterpart in this state inState v. Maresca, 85 Conn. 509, 510, in which the accused, charged with a felony, had no counsel on his arraignment and plea of guilty. Spano v. NewYork, 360 U.S. 315, 326, involved a capital crime and a confession. In Ex parte Sullivan, 107 F. Sup. 514,517 (D. Utah), the question was not one of denial of counsel but "whether the officers, after denying defendants counsel, can continue to hound them to give evidence against themselves." The defendants there were charged with first-degree murder. The quotation from Sacher v. UnitedStates, 343 U.S. 1, 23, is obiter dictum in a dissenting opinion, and the decision itself in no way relates to what the majority considers to be the issue before us. *Page 283 
If the rule enunciated by the majority is to prevail, then it may be expected that any indigent defendant, being detained under a proper arrest, can well claim that he is being denied the equal protection of the laws, because, even if his case warranted the assignment of a public defender, such an appointment could not be made until after his presentation in court; and thus the accused would be deprived of his right to counsel immediately upon his arrest. Carried to its logical extreme, a murderer, detained under the circumstances present in this case, would be liberated despite his proven guilt.
I view with sadness and regret a pronouncement of this novel rule of law which, upon the thinnest assumptions, having no relation to the general issue on which the accused was tried, frees him of guilt of which there can be no reasonable doubt. This has been done gratuitously, without support of anything in the record or in our procedural or substantive law. It has been accomplished by accepting as true facts which were not found to be true. We are not privileged to engage in a feat of necromancy, by materializing dragons in order to slay them. The judgment should stand.