Robert J. Trainor, J.
The defendant, John O’Hara, together with John Simmons and Thomas Stack, was indicted by the Grand Jury of Westchester County on December 12, 1947, for murder in the first degree, allegedly committed in the City of Yonkers, New York, on December 1,1947.
*294 On November 19, 1948, after a trial before Honorable Elbert T. Gallagher and a jury, a verdict of guilty of murder in the first degree (felony murder) was returned against all three defendants, with the jury’s recommendation that the defendants be imprisoned in a State prison for the term of their natural lives, and, on December 13,1948 this defendant was so sentenced.
By virtue of the decision in People v. Huntley (15 N Y 2d 72) the defendant filed a petition with this court, in the nature of a writ of error coram nobis, and demanded a hearing with respect to the voluntariness of three certain statements allegedly made by him and offered into evidence against him at his trial. An earlier filed petition also requested that the judgment of conviction be vacated on the ground that the District Attorney willfully and knowingly suppressed material evidence with respect to the defendant’s arraignment before the City Judge of Yonkers, sitting as a Magistrate, and that thus deprived the defendant of due process of law as guaranteed by the Sixth and Fourteenth Amendments of the United States Constitution.
A hearing to consider both petitions was granted, much testimony was taken and voluminous exhibits were received in evidence.
The determination depends upon whether the defendant’s alleged confessions were involuntary as a matter of law. The basis for this contention is that all three statements were made post-arraignment (all three after “ arraignment” before Coroner Squires, and the third one after the arraignment before Judge Fay) and thus are involuntary on the authority of People v. Meyer (11 N Y 2d 162 [1962]) which held that a statement taken from a defendant after arraignment but before indictment (which is the case here) was inadmissible as a matter of law. The resolution of this contention requires a brief review of the law as it existed prior to the Meyer case.
In People v. Spano (4 N Y 2d 256) the defendant argued that inasmuch as his confession had been exacted from him after indictment and in the absence of his attorney, it was a violation of his constitutional rights under the Fourteenth Amendment. Our Court of Appeals rejected this contention and found the confession to be admissible. The United States Supreme Court reversed the conviction, Spano v. New York (360 U. S. 315, 320 [1959]), but it held the confession inadmissible on the traditional ground of coercion in fact; it did not pass upon the defendant’s contention that .the confession was inadmissible because made post-arraignment: “ Petitioner’s first contention is that his absolute right to counsel in a capital case, Powell v. Alabama, 287 U. S. 45, became operative on the return of an indictment against *295 him, for at that time he was in every sense a defendant in a criminal case, the grand jury having found sufficient cause to believe that he had committed the crime. He argues accordingly that following indictment no confession obtained in the absence of counsel can be used without violating the Fourteenth Amendment. He seeks to distinguish Crooker v. California, 357 U. S. 433, and Cicenia v. Lagay, 357 U. S. 504, on the ground that in those cases no indictment had been returned. We find it unnecessary to reach that contention, for we find use of the confession obtained here inconsistent with the Fourteenth Amendment under traditional principles.” (Italics supplied.)
The question next reached our Court of Appeals in People v. Di Biasi (7 N Y 2d 544 [1960]). In that case, after indictment, the defendant had been surrendered to the police by his attorney and, thereafter, in the absence of his attorney, the police obtained a confession from him. The same argument was raised as in Spano. In Di Biasi, a majority in the Court of Appeals reversed its holding in Spano. Chief Judge Desmond (who had been a dissenter in Spano) wrote the prevailing opinion, wherein, in referring to the opinion of the United States Supreme Court in Spano, he stated that that court had thrown out the confession on traditional grounds and, as to the other contention: ‘ ‘ The Supreme Court majority therefore, did not directly decide the question ’ ’ but “ * * * we do not think we are concluded by * * * Spano. We think this questioning was in violation of this defendant’s constitutional rights and that the admission in evidence, over objection, of his admissions made during the questioning after indictment and surrender for arraignment was so gross an error as to require reversal, regardless of any other question in this case ” (pp. 550-551; italics supplied).
Thus, in 1960, lacking any ponouncement of the United States Supreme Court as authority, our Court of Appeals, for the first time itself assumed the responsibility of declaring their holding in Di Biasi to be the law, as of then, 1960. There is no express statement, nor any intimation, that this holding is to he given retroactive effect. Nor have we been able to find any case, earlier than Di Biasi, holding that a post-indictment confession made in the absence of an attorney is inadmissible for that reason only. In his dissenting opinion in Di Biasi Judge Dye said, referring to Spano (p. 555): “ Thus a majority in the Supreme Court refused to consider the contention that a defendant’s confession, made after indictment but before arraignment, is inadmissible solely on the ground that it was given in the absence of his attorney.”
*296 Di Biasi was a capital case. The following year the Court of Appeals decided People v. Waterman (9 N Y 2d 561 [1961]) and extended its Di Biasi holding to a noncapital case. Then came People v. Meyer (11 N Y 2d 162 [1962]) upon which the argument of the defendant herein must, in our opinion, stand or fall. Meyer extended the Di Biasi and Waterman holding still further by ruling involuntary and inadmissible as a matter of law, a statement taken from a defendant after his arraignment but before indictment. Di Biasi and Waterman refer to after indictment but before arraignment, whereas Meyer relates to after arraignment but before indictment. This would sound like double talk in reverse unless we bear in mind that the arraignment in Di Biasi and Waterman has reference to an arraignment under section 296 of the Code of Criminal Procedure, after indictment, whereas the arraignment referred to in Meyer is the one under section 188 of the Code of Criminal Procedure, after arrest but before indictment. The Meyer case does not expressly state, nor does it intimate, that its holding is to be given retroactive effect, and no earlier case has been called to our attention which accords with Meyer. It seems to us incontrovertible that Di Biasi, Waterman and Meyer established principles of law not theretofore recognized as such in New York State, and while it is possible that those principles might have been made applicable to cases still in the appellate stage as of the dates of the respective decisions, we can find no authority which holds them otherwise retroactive so as to include a final judgment rendered in 1948. I have read People v. Augello (48 Misc 2d 550). This recent case found a 1944 confession to be involuntary in fact, on .traditional grounds, and thus has no influence or significance in view of our findings that the confessions herein were not in fact coerced.
Two other cases have been cited to me by the defendant as authority for the proposition that post-arraignment statements in the absence of counsel are involuntary as a matter of law and thus must be held to be inadmissible. One is a case decided in this court this year, People v. Lee (N. Y. L. J., April 8,1966, p. 17, col. 2) and the other is People v. Martin (July 26, 1966). In Lee, statements had been obtained from him after his arraignment and in the absence of counsel, in the year 1952, which was prior to Di Biasi (1960), Waterman (1961) and Meyer, 1962). The Judge who presided in that case ruled that the statements should not have been received in evidence and reversed the conviction. Although the language of the decision does not expressly so state, it must be presumed that the Judge considered Meyer to have had retroactive effect since the reversal *297 was not stated to be on traditional grounds, but no authority for such finding is stated. I find that I must respectfully disagree with this holding.
In Martin, the defendant had been convicted of murder in 1946 and his death sentence was thereafter commuted to life imprisonment. By coram nobis he sought to have his conviction vacated on the grounds, among others, that the statements by him were made under force, fear and duress, that he was not advised of his right to counsel, etc., and that he was not afforded a separate hearing as to the voluntariness of his confession (Jackson v. Denno, 378 U. S. 368 [1964]; People v. Huntley, 15 N Y 2d 72 [1965]). A hearing was held before Honorable Charles B. Brasser, Justice of the Supreme Court, Wayne County. Justice Bbasseb held that a seven-page statement of the defendant, taken before arraignment, was voluntary and was properly received in evidence at the trial. After arraignment he gave a 17-page statement to the District Attorney. No claim was made of any physical force or abuse at any time. Justice Bbasseb reviewed the recent history of post-indictment and post-arraignment confessions, citing all of the landmark cases. He particularly quotes Judge Dye in the Meyer case (11 N Y 2d 162, 164): “ In reason and logic the admissibility into evidence of a post-arraignment statement should not be treated any differently than a post-indictment statement.”
But it should be remembered that Judge Dye wrote a strong dissent in Di Biasi and thereafter was required to adhere to the majority holding when Waterman and Meyer were decided. Since he had to go along with the majority in Waterman there was nothing illogical in extending the protection to Meyer.
Justice Bbasseb concludes without, in my opinion, citing any authority, that the holdings of Di Biasi, Waterman and Meyer are to be given retroactive effect, and he reversed the 1946 conviction. I must most respectfully disagree with this conclusion in the absence of express, or even implied, authority for it.
Johnson v. New Jersey (384 U. S. 719, 721) denied retroactivity to Escobedo and Miranda, when it stated: “We hold that Escobedo affects only those cases in which the trial began after June 22, 1964, the date of that decision. We hold further that Miranda applies only to cases in which the trial began after the date of [that] decision one week ago.” (June 13,1966.)
That disposes of defendant O’Hara’s claim that the failure to give the warnings mandated by Miranda and Escobedo infringed upon his constitutional rights. People v. Gunner (15 N Y 2d 226 [1965]) had previously held that such warnings were not mandated under New York law.
*298 There seems to have been some confusion in this case (O’Hara) concerning his arraignment. It might appear as though he had been arraigned twice, once by the coroner and once by Judge Fay. In view of my finding that Meyer is without retroactive effect, it is unnecessary to determine whether there were two arraignments. However, from the proof before me I would be inclined to hold that there was only one arraignment, i.e., the one before Judge Fay. Under the former sections of the Code of Criminal Procedure (§■§ 773 through 790), when appropriate, the coroner was required to conduct a formal hearing. The .testimony of the witnesses must be reduced to writing and filed in the County Clerk’s office (§ 778). If the defendant has been arrested before the inquisition is filed, the coroner must deliver it together with all testimony to the Magistrate before whom defendant is brought (§ 779). The Magistrate, or the Coroner, must proceed to examine the charge (§ 783). Apparently no formal inquest was held by the coroner, no sworn testimony was taken. All the coroner did was to say to the defendant ‘ ‘ I am charging you with murder and holding you for the Grand Jury.” This did not comply with the sections of the code quoted and rise to the dignity of a hearing or inquest. Since the defendant was in custody when the coroner arrived, section 779 of the Code of Criminal Procedure, required that he turn over jurisdiction to a Magistrate. Although for very limited purposes a coroner was cloaked with some of the powers of a Magistrate, the Code of Criminal Procedure specifically lists those officers who are Magistrates, and a coroner is not included (Code Crim. Pro., § 147).
As to the sole remaining contention of the defendant, i.e., that the District Attorney willfully withheld vital information concerning the defendant’s arraignment from the Grand Jury, I find it to be without merit. There is no question, that the defendant was arraigned before indictment and again arraigned before Judge Gallagheb after indictment. Any alleged irregularity in the arraignment procedures in the first instance or any measures taken by the Magistrate would not affect the subsequent indictment (People ex rel. Hirschberg v. Close, 1 N Y 2d 259), and I cannot conceive how knowledge of the fact that there had been one or two arraignments, before the defendant was questioned, could have in any way influenced the deliberations of the trial jury.
Obviously, insofar as the taking of the statements from the defendant was concerned, the District Attorney did not consider the time of the arraignment to be important, since this was 1947, many years before Di Biasi, Waterman and Meyer, and *299 before any appellate court had made any authoritative pronouncement that post-arraignment statements were involuntary and thus inadmissible.
I find, beyond a reasonable doubt, that all three of the defendant O’Hara’s contested statements were not made under the influence of fear produced by threats, or by physical abuse or other forms of coercion, or induced by a promise made by the District Attorney that he would not be prosecuted based upon any information disclosed thereon, and that each of said statements was the free and voluntary act of the defendant, O’Hara.