**Lacy Randolph MORRIS, Petitioner,**

v.

**C. C. PEYTON, Superintendent of the Virginia State Penitentiary, Respondent.**

**No. 66-C-20-C.**

United States District Court
W. D. Virginia,
Charlottesville Division.

March 6, 1967.

---

## OPINION AND JUDGMENT

MICHIE, District Judge.

On July 28, 1962 in the Corporation Court of the City of Charlottesville, the above-named prisoner, after pleading not guilty, was convicted of kidnapping and sentenced to serve twenty years in the state penitentiary. At his trial he was represented by court-appointed counsel, Robert H. Blodinger. No appeal from this substantive conviction was taken.

Thereafter Morris filed a petition for habeas corpus in the Virginia state courts claiming that his Sixth and Fourteenth Amendment rights were violated because he was not represented by counsel at his preliminary hearing and at other "critical stages" of the criminal proceedings. Herbert A. Pickford, an attorney from Charlottesville, was appointed to represent Morris in his state habeas corpus proceeding and on March 16, 1965 a plenary hearing was held in the Corporation Court of the City of Charlottesville on issues raised by the prisoner's collateral attack. At the hearing Morris' petition was denied. A transcript of that hearing has been received by this court and is hereby designated as part of the record.

Having exhausted his state remedies, petitioner now comes to this court making the same allegations as noted above. The record shows that Morris was arrested around midnight on June 28, 1962 along with one Roger Irving Cubbage. During an interrogation which took place soon after his arrest, Morris made certain incriminating statements which, while not full confessions by any means, were used against him later at his trial. (State Habeas Corpus Transcript pp. 49–50) On July 6, 1962, six days after a preliminary hearing was held, the prisoner was taken to the State Prison Farm in Goochland County. A week later, on July 13th, the Corporation Court appointed Mr. Blodinger to represent Morris. The attorney saw Morris once at the State Farm and once just before trial. Though there were various allegations made at the state habeas corpus hearing to the effect that court-appointed counsel was ineffective in representing Morris, I find these to be without merit under the circumstances of this case.

The contention that Morris' rights were violated by his not having been represented by counsel at an earlier date comes closer to presenting a ground for relief, not because the delay itself hampered Blodinger in his representation of Morris but because incriminating statements were obtained during Morris' interrogation when he was without benefit of counsel.

Unfortunately for Morris, the rules established by Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964) and Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) do not apply retroactively to his 1962 conviction.

Johnson v. State of New Jersey, 384 U. S. 719, 721, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966). Instead of being able to rely on *Escobedo* and *Miranda,* petitioner must use principles governing an accused's right to counsel which prevailed at the time of his conviction in 1962. Since there is no evidence of his statements having been made involuntarily, Morris is relegated to his right to counsel allegation *per se* and thus cannot borrow the *Escobedo* and *Miranda* safeguards as part of an involuntariness claim so that these standards of voluntariness will apply retroactively as allowed in Ledbetter v. Warden, 368 F.2d 490 (4th Cir. 1966).

██ ██ With the above limitations in mind, a look at the judicial decisions applicable to Morris' conviction reveals that Morris, in 1962, did not have an absolute right to counsel during his preliminary hearing or the period in which he was originally questioned. It is well established that a preliminary hearing or an arraignment can be and is a "critical stage" of the proceedings in some jurisdictions. In those jurisdictions under appropriate circumstances the Supreme Court has said that a prisoner has an absolute right to be represented by counsel. See, e. g., Hamilton v. State of Alabama, 368 U.S. 52, 82 S. Ct. 157, 7 L.Ed.2d 114 (1961) and White v. State of Maryland, 373 U.S. 59, 83 S. Ct. 1050, 10 L.Ed.2d 193 (1963). But such a proceeding is considered to be critical in those jurisdictions for a reason that does not exist in the instant case—namely, that certain pleas or defenses must be made at that early stage or be forever lost; or that a plea of guilty, if made, will be introduced at the prisoner's substantive trial. In this case, in spite of the benefit of having had a full state habeas corpus hearing with the aid of a competent attorney, Morris was unable to show the slightest evidence that would indicate that the absence of counsel on his behalf at his preliminary hearing actually prejudiced him in any way in his subsequent conviction. Without such a showing and without the pro-

ceeding's being inherently prejudicial, his claim that his preliminary hearing was a "critical stage" of the proceedings is not convincing. Evidently Morris' attorney at the state habeas corpus hearing recognized this absence of actual or inherent prejudice for most of the argument in the habeas corpus hearing centered around the critical nature of the *interrogation, not* the *preliminary hearing.*

Assuming for a moment, without admitting the validity of such assumption, that Morris was not given the opportunity to secure counsel before the interrogation took place in 1962, the relevant issue becomes whether the concepts of due process or right to counsel as they existed in 1962 prevented police from questioning a suspect before indictment without giving him an opportunity to secure counsel. If Morris had been convicted in 1958, the answer would certainly be in the negative. See Crooker v. State of California, 357 U.S. 433, 78 S.Ct. 1287, 2 L.Ed.2d 1448 (1958) (due process not violated even though accused asked for and was denied counsel before confessing); See also Cicenia v. La Gay, 357 U.S. 504, 78 S.Ct. 1297, 2 L.Ed.2d 1523 (1958) (due process not violated where the accused had retained counsel who repeatedly sought access to his client while the latter was being questioned).

Since *Escobedo* and *Miranda* do not apply retroactively, a look at decisions handed down after 1958 but before the 1964 *Escobedo* decision is appropriate to see in what respect, if any, the *Crooker* and *Cicenia* opinions were modified. If the latter two cases are controlling in the instant case, as already stated, Morris has no right to relief.

Spano v. People of State of New York, 360 U.S. 315, 79 S.Ct. 1202, 3 L.Ed.2d 1265 (1959), which reversed a state criminal conviction because a confession had been wrongly admitted into evidence at the defendant's trial, did not overrule Crooker v. State of California, supra, or Cicenia v. La Gay, supra. Indeed in *Spano,* there was rather clear evidence of

914

the accused's having been forced, without the benefit of his privately retained counsel, to sit through what Justice Douglas described in his concurring opinion in *Spano*, 360 U.S. at 325, 79 S. Ct. 1202 as a "kangaroo court procedure". What occurred in *Spano*, therefore, would have been a violation of due process even as far back as when Powell v. State of Alabama, 287 U.S. 45, 53 S. Ct. 55, 77 L.Ed. 158 (1932) evoked the broad "critical stage" principle. There being no kangaroo-like proceeding in the instant case, *Spano* is easily distinguishable from it. *Spano* can also be distinguished factually from *Crooker* and *Cicenia,* principally because a much greater degree of pressure was placed upon *Spano* by his interrogators.

■ The four cases decided after *Spano* and before *Escobedo* which come closest to defining what the Supreme Court considered to be the "critical stage" of a criminal proceeding for Sixth Amendment purposes when the present petitioner was arrested and questioned and tried are Hamilton v. State of Alabama, 368 U.S. 52, 82 S.Ct. 157 (1961); Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); White v. State of Maryland, 373 U.S. 59, 83 S. Ct. 1050 (1963) and Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964). Though *Hamilton* and *White* established that an arraignment is a "critical stage" in Alabama, and in Maryland under the circumstances of the *White* case, though *Gideon* erased the distinction between right to counsel in a capital and a non-capital case, and though *Massiah* indicated that a federal prisoner, a narcotic suspect free on bail, to whom the Sixth Amendment directly applied, had a right to his retained counsel *after* his indictment while he was being investigated and while incriminating statements were being obtained from him by federal agents in a surreptitious manner—none of these cases label the period *before indictment,* the period

during which Morris was interrogated, as being a "critical stage" of the proceedings. Governed by the foregoing cases, I cannot now hold that the absence of counsel during the original questioning of Morris in the instant case was a violation of his Sixth and Fourteenth Amendment rights.

I find that the petitioner was given a full and fair evidentiary hearing in the state habeas corpus proceeding by a judge who correctly applied the appropriate law to the facts involved.

Accordingly, it is

### Ordered

that the prisoner's petition is hereby denied and it is further

### Ordered

that the petitioner be and he hereby is granted leave to proceed on appeal in forma pauperis from this order.

It appearing to the court that the petitioner raises no substantial question, it is further

### Ordered

that, if the petitioner wishes to appeal, an application for a certificate of probable cause will be denied by this court.

If the petitioner wishes to appeal, he must file written notice of appeal with this court within thirty days from the entry of this order and, if he does file such notice, the Clerk of this court is directed to transmit the record on appeal to the United States Court of Appeals for the Fourth Circuit.

If any state records have been received by this court, the Clerk is directed to return such records after thirty days if no appeal is noted. If an appeal is noted, the Clerk is directed to retain the records pending final disposition of the case.

Let the Clerk send copies of this order to the petitioner and to the Attorney General of Virginia.